DELORA M. HUNTER et al., as Administrators, etc., Respondents, *v.* THE COOPERSTOWN AND SUSQUEHANNA VALLEY RAILROAD COMPANY, Appellant.

A person who, when in a safe position and under no stress of circumstances, attempts to get upon a railroad train in motion, while in such proximity to a known and prominent obstruction as would render the consequences of a misstep possibly if not certainly serious, no matter what motive or influence induced the act, is alone responsible for any injury which results to him and cannot maintain an action against the company for negligence. (RUGER, Ch. J., ANDREWS and O'BRIEN, JJ., dissenting.)

In an action to recover damages for alleged negligence causing the death of H. plaintiffs' intestate, it appeared that H., a healthy, active man, thirty-six years old who had for several years resided in sight of one of defendant's stations, at which he had frequently boarded trains, went to the depot to take a train; he stood upon the freight platform until the train came in sight; he then descended some steps to the passenger platform and stood three or four feet from the steps waiting for the train, which slowed up but did not stop. As the passenger car approached, moving at the rate of from one to two miles an hour, the conductor, who was standing on the forward end, said, "if you are going, jump on." H. attempted to do so, but was caught and crushed between the moving train and the freight platform. *Held* (RUGER, Ch. J., ANDREWS and O'BRIEN, JJ., dissenting), that H. was guilty of contributory negligence, and the submission of that question to the jury was error.

*Filer* v. *N. Y. C. R. R. Co.* (49 N. Y. 47), distinguished.

Reported on a former appeal, 112 N. Y. 371.

(Argued February 24, 1891; decided March 10, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made November 25, 1890, which affirmed a judgment in favor of plaintiffs entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action to recover damages for the negligent killing of Harry Hunter, plaintiffs' intestate.

The facts, so far as material, are stated in the opinion.

*E. M. Harris* for appellant. The court should have nonsuited the plaintiffs and dismissed their complaint, or ordered

a verdict for the defendant. (*Tabor* v. *D., L. & W. R. R. Co.,* 71 N. Y. 489.) The defendant was not guilty of negligence. *Paulitsch* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 280 ; *C. R. I. & P. R. R. Co.* v. *Houston,* 5 Wkly. Dig. 523 ; *Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.,* 82 N. Y. 424 ; *Taber* v. *D., L. & W. R. R. Co.,* 71 id. 489 ; *Hunter* v. *C. & S. V. R. R. Co.,* 112 N. Y. 371 ; *Burrows* v. *E. R. Co.,* 63 id. 556 ; *Gavet* v. *M. & C. R. R. Co.,* 16 Gray, 501 ; *Harvey* v. *E. R. R. Co.,* 116 Mass. 269 ; *Lucas* v. *N. B. & T. R. R. Co.,* 6 Gray, 64 ; *Solomon* v. *M. C. W. Co.,* 103 N. Y. 437 ; *Wilds* v. *H. R. R. R. Co.,* 24 N. Y. 430–433 ; *Owen* v. *H. R. R. R. Co.,* 35 id. 516 ; *Gonzalles* v. *N. Y. & H. R. R. Co.,* 38 id. 445 ; *Dwight* v. *G. L. Ins. Co.,* 3 N. Y. S. R. 115 ; *Crafts* v. *City of Boston,* 109 Mass. 519 ; *Deyo* v. *N. Y. C. R. R. Co.,* 34 N. Y. 9 ; *Morrison* v. *E. R. Co.,* 56 id. 302–310 ; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 id. 248 ; *Warner* v. *N. Y. C. R. R. Co.,* 44 id. 465 ; *Warren* v. *F. R. R. Co.,* 8 Allen, 227–230 ; *Lee* v. *T. C. G. Co.,* 98 N. Y. 115 ; *Shapper* v. *Ringler,* 13 J. & S. 345 ; *Tolman* v. *S. B. & N. Y. R. R. Co.,* 98 N. Y. 198 ; S. & R. on Neg. § 281 ; Beach on Con. Neg. 19, 22, 23, 24, 26, 27 ; *Mayor, etc.,* v. *Bailey,* 1 Den. 433.) In attempting to get on the moving train, under the circumstances proven in this case, the deceased was committing an indictable offense. (Penal Code, § 426, subd. 2.)

*Carlton B. Pierce* for respondents. In the case at bar there was a young man described as "active," entirely free and unimpeded in his movements, the train going so slow that its motion was practically nothing, a very slow walk, and an imperative direction from the conductor to "jump on." Under such circumstances it was not contributory negligence for him to board the train. (Pierce on Railroads, 329 ; S. & R. on Neg. § 282 ; 17 Mich. 99 ; *Glushing* v. *Sharp,* 96 N. Y. 676 ; *Lambeth* v. *N. C. R. R. Co.,* 66 N. C. 494 ; *C. V. R. R. Co.* v. *Mangons,* 61 Md. 53 ; *Lent* v. *N. Y. C. & H. R. R. R. Co.,* 120 N. Y. 467.) The defendant was negligent in not stopping its train and particularly in directing Hunter to

board a moving train. (*Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128.) The conductor represents the defend-ant. (*Bass* v. *Railway Co.*, 36 Wis. 450; *R. R. Co.* v. *Mills*, 19 Mich. 305.) Hunter had a right to rely upon the conductor's invitation. (*Glushing* v. *Sharp*, 96 N. Y. 676.)

GRAY, J.  Upon a previous occasion we reversed a judg-ment recovered by these plaintiffs and ordered a new trial; upon the ground that the act of the deceased, in attempting to board the moving train, was reckless and dangerous and con-tributed to the resulting injury.  As the case was then pre-sented, the fact was established by the evidence for the plaintiffs that the speed of the train was from four to six miles an hour, at the time the deceased jumped on; and though it was sub-stantially admitted that the attempt was negligence on his part, it was argued that the act was justified, because requested, or directed by the conductor of the train.  That direction was in these words: " if you are going, jump on."  But we held that that circumstance constituted no excuse for the dangerous act; inasmuch as it created no emergency, calling for the immediate exercise of judgment in the choice between two dangers, and that it amounted to nothing more than a notification that the train would not stop, or go slower.  Upon this appeal the plaintiffs endeavor to sustain another judgment, recovered against the company upon the new trial.  They say that the case, though " practically the same," differs from the previous case in a vital feature ; namely, with respect to the speed of the train.  Upon the new trial evidence was given by three wit-nesses that the speed of the train was between one and two miles an hour.  Of these witnesses, two had previously testified to a speed of four to six miles an hour and the other had not testified upon that subject.

In view of the doubt justly resting upon the character and correctness of this evidence, we might very properly say that it was open to the court to take as the fact concerning the speed of the train the evidence given by the other witnesses in the case for both parties, which placed it at about six miles

an hour. But we shall, for the purposes of the case, assume that the evidence as now given left it a question of fact as to how fast the train was moving past the station. We will accept that rate of speed deemed by the plaintiffs as most favorable to their contention, and still we must hold that the plaintiffs were not entitled to a recovery on their case. The conclusion was irresistible from the facts that the conduct of the plaintiffs' intestate was negligent, and that his act contributed to his injuries and death. He was described as a quick, active man, thirty-six years of age, and in good health. He had lived several years in sight of the station, and had frequently taken the trains there. On the morning in question, accompanied by a friend, he went to the station and stood with him upon the freight platform of the station, until the train came in sight. The deceased then descended the steps leading to the lower or passenger platform, and waited there, at a point some four or five feet away from the steps. The train slackened its motion, but did not stop, and, as the passenger car approached, the conductor, standing at the forward end, said to them: "If you are going, jump on." The deceased made an effort to do so, but in some way, not exactly described, was caught and rolled between the moving train and the freight platform near to which he was standing. Very probably, in the attempt to get upon the moving car, the deceased, not reckoning upon the nearness of the higher and projecting freight platform, struck against it, was thrown down and was forced between it and the train. Upon the facts, in what respect was the defendant guilty of negligence, and how was it responsible for the injury which resulted to the deceased? That the train did not stop at a particular, or at the usual place, and ran beyond the station would not charge the defendant with negligence, in the sense that it thereby caused the unfortunate result complained of. The deceased was under no obligation to board the train. In fact he had no especial right to be carried by it. He had no ticket, but, even if he had one, that would not have placed the company under any contract to carry him upon that train. If its servants disregarded the

time-table notice as to that station upon the morning in question, that fact did not entitle the deceased to disregard the usual prudential considerations, which should govern. human action, nor did it subject the defendant to a liability for the consequences of an attempt to get upon a train in motion. The invitation, request, or command of the conductor, however his words may be regarded, in no respect compelled the deceased to leave the place of safety upon the platform, or to change his position. He was a free agent, and had the opportunity of choice between staying where he was and complying with the conductor's request. He could have waited for the train to come to a full stop, or for another train. The question of his convenience, or inconvenience, is of no consequence, and cannot enter as an element of the case. If a person, when in a safe position and under no stress of circumstances, attempts to get upon a train moving past him, at no matter what rate of speed, while in such a proximity to a known and prominent obstruction, such as was this freight platform, as to render the consequences of a false or mis-step possibly, if not certainly, serious, we think that but one inference and opinion can be entertained. The act would be hazardous, and, however slight the chances of injury might have seemed to him, and whatever the motive or influence which induced the act, the individual would alone be responsible for the injury which might result to him.

Sufficient responsibility is imposed upon these corporations in the operation of their roads already, without adding to it a further responsibility for the consequences of rash and unnecessary acts. The railroad and the trains upon it charge all persons, having anything to do with or about them, with the knowledge of possible dangers, and their presence impose the duty of being vigilant and prudent, if responsibility for an occurring injury is to be escaped. It is unnecessary to refer to authorities bearing upon the question before us. That has been done by Judge PECKHAM in his opinion, when this case was formerly before us. The only difference now is that the respondents claim the speed of the train as testified to was so

very moderate as to take this case out of the effect of our previous decision and to make it one for the jury to pass upon, with respect to the question of whether the act of the deceased was negligent. It is true that, upon the previous appeal, we laid stress upon the fact that the rate of speed was such as to compel the judgment to pronounce it a reckless act to attempt to board the train. But we did not hold that if a train was moving much more slowly, the attempt, under the circumstances disclosed here, might be warrantable, or would raise a question for the jury to consider. It was said that there may be cases in which an attempt to get on or off a moving train would not be regarded as negligence, as matter of law. And so there may be; but this is not one of those cases, inasmuch as the deceased was under no coercion, nor obligation, and had no especial right to be carried by that train. He was so placed that, while safe if he remained quiet and where he was, he was bound to know and must have known that if he endeavored to get upon the moving train, and should fail to accomplish it upon the second, or should take a mis-step, he incurred the risk of being thrown against the neighboring freight platform and injured. The case of a passenger, who alights from a train moving past his destination, in compliance with the direction of a servant of the corporation, as in the *Filer* case (49 N. Y. 47), cannot be altogether likened to the present case. In such a case there may be a stress of circumstances, in the passenger being obliged to choose between being carried away from the place where his duties or ties compelled his presence, and of endeavoring to alight, upon the direction or suggestion of the railroad employé. The question then might very properly be left to the jury, for them to pronounce upon the character of the act; but even then, as it was held in the *Filer* case, if the cars were moving at such a rapid rate as to charge the person with knowledge of the danger in the attempt, the act would be reckless and no recovery could be had. To alight from, or to board a train in motion, is a negligent and hazardous act, which can only be made to appear excusable when, in the situation of the person, he is under

such a coercion of circumstances as to raise a fair question as to whether he was really in the free possession and use of his faculties and judgment. (*Solomon* v. *Manhattan R. Co.,* 103 N. Y. 437.) Judge ANDREWS, in the case cited, held substantially as I have just stated. In his view, there is less excuse in boarding a moving train than in alighting from it, and the distinction is obvious. The option in the former case is between an unnecessary and possibly dangerous act and the mere inconvenience of being left to take a later train.

These views lead to the conclusion that the judgment below should be reversed and a new trial ordered, with costs to abide the event.

O'BRIEN, J. (dissenting). When this case was here on a former appeal (112 N. Y. 371), it was held that the plaintiff's intestate was guilty of negligence, contributing to his death, because he attempted to board the train when running by the station at the rate of at least six miles per hour. As the case was then presented, the testimony conclusively established the fact that at the time when the train was passing the platform on which the deceased stood, it was running at that rate of speed at least, if not even more. Now, the case is here upon a very different state of facts. Upon the last trial, resulting in the judgment now under review, three witnesses called by the plaintiff testified that the train was running, at the time the deceased attempted to get on, at a rate of speed not to exceed from one to two miles per hour. One of these witnesses was the engineer who had charge of this very train when the accident happened, and another was the fireman. The defendant, on the first trial, gave no evidence in regard to the speed of the train, but on the last trial it called two witnesses, who testified that it was six or seven miles per hour. There were some facts and circumstances proven, bearing on the question of speed which could also have been considered by the jury, not the least important of which was the undisputed fact that, though the train was running upon a slippery track and a down grade, it was brought to a full stop within one hundred feet

of the point where the deceased attempted to get on.   In this
conflict of testimony the case went to the jury and the verdict
for the plaintiff must be taken by us as conclusively establish-
ing the fact that the train was running at the rate of from one
to two miles per hour.   It is said that two of the plaintiffs'
witnesses testified on the first trial to a greater rate of speed
than upon the last trial.   That, if true, was a circumstance
for the consideration of the jury in determining what weight
the testsmony was entitled to, but it has no place in the con-
sideration of this appeal.   The only question that we have to
deal with is whether the deceased, in attempting to board the
train when going by the station platform at the rate of from
one to two miles per hour, and having been invited by the
conductor in charge of the train to "jump on," was guilty of
negligence, as matter of law.   It was a regular station on
defendant's road where its train stopped and where passengers
got on and off.   On this morning, however, it failed to stop.
The plaintiffs' intestate was on the platform waiting for the
train which he intended to take as a passenger, and while so
waiting for it to stop it proceeded slowly past the platform,
and when the rear car, which was the only passenger car on the
train, had nearly reached the point where he was, the conductor,
not intending to stop, invited him to get on and, he attempted
to do so and was killed.   It is not the province of this court to
examine the evidence in order to form some theory as to the par-
ticular manner in which the deceased was killed.   That was for
the jury.   We can only know from the findings below that the
platform on which he stood was separated from the car into
which he was invited by a space not more than six inches wide,
that the iron railing on the part of the car through which he
must pass was two feet and six inches wide and the platform
of the car which he attempted to reach was but two feet higher
than the place where he stood.   The attempt of a passenger
to board a train going at a very low rate of speed in this man-
ner and under such circumstances is not in my opinion such a
reckless and dangerous act as to warrant any court in pronounc-
ing it negligence *per se.*   It is at most an act in regard to which

reasonable and prudent men may differ and, therefore, it is for the jury to determine its true character as a question of fact, under all the circumstances of the case. This rule was stated by Pᴇᴄᴋʜᴀᴍ, J., in his opinion in this very case on the former appeal in this language: " There may undoubtedly be circumstances under which an attempt to get on or off a moving train would not be regarded as negligence, as a matter of law and where the question of negligence under all the circumstances of the case should be submitted to the jury." If this rule cannot properly be applied to a case like this, where the train upon the finding of the jury, was barely in motion, it cannot have any practical application to any case whatever. If it is correct to say that a passenger in attempting to board a train, moving at the rate of one to two miles per hour, under the conditions and circumstances appearing in this case, is guilty of negligence as matter of law, then the same result must follow in every case when the train is in motion at all. The act of alighting from a moving train is quite as dangerous as an attempt to board it while going at the same speed. The only difference is that there exists a stress of circumstances in the former case that does not exist in the latter. But the fact that there may be reasons for risking the danger in one case which do not exist in the other is not alone enough to change the question from one of fact to one of law. This Court has held that a passenger who attempts to get off a slowly moving train by the invitation of a servant of the company is not as a matter of law, guilty of negligence. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47.)

In that case the danger of getting off was as great and even greater than would be an attempt to get on while the motion of the train was the same. The passenger could have remained on the train and suffered the inconvenience of being carried past her home, and in the case at bar the deceased could have waited for another train, but surely this difference in the circumstances cannot change what was held to be a question of fact in the former case into a question of law in this. The highest court in at least three of our sister states has passed

upon this question, and in each case it has been held to be one of fact.

In *Johnson* v. *West Chester & P. R. R. Co.* (70 Penn. St. 357) a passenger attempted to board a train moving at from three to four miles per hour. There was no invitation to enter the car. It was held that it was for the jury to say whether the danger of boarding the train when in motion was so apparent as to make it the duty of the passenger to desist from the attempt. Where the conductor failed to stop the train at the platform where the passengers landed and when the train was moving at from two to four miles per hour, he told a passenger to get off, who obeyed his direction and was killed, it was held that this act was not in law negligence, but was a question for the jury. (*Lambeth* v. *N. C. R. R. Co.*, 66 N. C. 494.)

In another case a young, vigorous man stepped down from a moving train. He had a valise in one hand and a basket in the other. There was no direction from any servant of the company. In an action to recover for injuries received it was held that it was a question for the jury whether he exercised due care. (*Cumberland Valley R. R. Co.* v. *Maugans*, 61 Md. 53.)

I think that the act of the deceased in attempting to board the train upon the invitation of the conductor and under all the circumstances disclosed in this case, presented a question of fact for the jury and not a question of law.

The judgment in this case cannot be disturbed unless we are prepared to decide that the deceased was in law guilty of negligence in attempting to board the train in the manner and under the circumstances stated. The evidence of negligence on the part of the defendant is precisely the same now as when the case was here before. On that appeal Judge PECKHAM said: "It was the duty of the railroad company (having advertised so to do) to stop its trains at the station in question, and to give ample time to all persons desirous of getting on or leaving at that station to do so." And again, referring to the invitation of the conductor to get on the train, he said: "It may be assumed that this direction implied a notice to the

deceased that the train would not stop at that station, and that unless he attempted to get on while the car was thus in motion he would be left at the station and compelled to take another and a later train. It may be assumed that in giving this direction and in failing to stop the train the company was chargeable with negligence."

The point that the trial judge submitted nothing to the jury except the evidence as to whether the conductor did or did not invite the deceased to get on the train is utterly untenable. The jury were expressly charged to inquire upon the evidence whether the defendant failed to perform its duty to the deceased in not bringing the train to a stop, and upon the question whether a safe opportunity was afforded to the defendant to get upon the train, they were to consider the evidence in regard to the invitation of the conductor. At the end of the charge defendant's counsel requested the court to instruct the jury that in case they found that the conductor did not invite the deceased to get aboard the train, their verdict must be for the defendant, as that ended the case, and this request was allowed. This did not withdraw from the jury the evidence bearing upon the failure of the defendant to stop, or any other question previously submitted, but was in effect an instruction that, although the defendant failed in its duty to stop the train at the station, yet there could be no recovery unless the conductor invited the deceased to get on. If there was any error in this part of the charge it was in favor of the defendant and cannot now be used for the purpose of reversing the judgment.

The judgment should be affirmed.

All concur with Gray, J., except Ruger, Ch. J., Andrews and O'Brien, JJ., dissenting.

Judgment reversed.