GEORGE V. R. LEWIS, as Administrator, etc., of MOSES LEWIS,
Deceased, Appellant, *v.* THE PRESIDENT, MANAGERS AND COMPANY
OF THE DELAWARE AND HUDSON CANAL COMPANY, Respondent.

*Damages sustained by stepping from a moving train — what instruction of the con-
ductor does not amount to negligence on the part of the railroad company — con-
tributory negligence.*

Upon the trial of an action brought to recover damages resulting from the death
of the plaintiff's intestate, caused by the alleged negligence of the defendant,
it was shown that the plaintiff's intestate boarded a train at Cobleskill which
was a through train from that point to Albany.    After the train had left Cobles-
kill, the conductor, in passing through the train collecting fares, was handed
by the plaintiff's intestate a mileage book, and at the same time was informed
by him that he desired to stop at Quaker Street, an intermediate station at which
the train was not permitted to stop.    The conductor informed him that he did
not think the train would stop at such station.    Returning in a short time, he
said, " We will not stop at Quaker Street," but " will see."

Subsequently the train was compelled to slow up to allow a freight train going in
the opposite direction to pass over a bridge on which there was not sufficient
room for the two trains to pass; at this point the conductor said to the plaintiff's
intestate :  " It is going pretty slow now, and it will be going faster, and you
better get off now ; that is all I have to say about it."    The deceased there-
upon stepped off between the freight and passenger trains, was hit by the
freight train and sustained thereby injuries which resulted in his death.

It was not shown whether the deceased was aware of the proximity of the freight
train to the passenger car at the time he alighted therefrom, but it appeared
that there was ample space on the opposite side of the passenger car from the
freight train for the deceased to have alighted.

*Held,* that in stepping from the car the plaintiff's intestate did an act for which the
railroad company was in no way legally responsible ; he took the hazard of the
consequences of his negligence, and it cannot be imputed to the defendant;

That to alight from or to board a moving train is negligence *per se,* and the
plaintiff's intestate was guilty of negligence in so doing; that when he did
attempt to alight it was his duty to exercise caution in the attempt, and to look
and listen before alighting on the track of a railroad, away from a station, where
trains were liable to pass and might be expected at any moment.

APPEAL by the plaintiff, George V. R. Lewis, as administrator,
etc., of Moses Lewis, deceased, from a judgment of the Supreme
Court in favor of the defendant, entered in the office of the clerk of
the county of Saratoga on the 27th day of October, 1893, upon the
dismissal of the complaint directed by the court after a trial at the
Saratoga Circuit before the court and a jury, and also from the

order and decision of the court rendered at such Circuit upon which said judgment was rendered, with notice of an intention to bring up for review upon such appeal said judgment, order and decision.

*James W. Verbeck*, for the appellant.

*Lewis E. Carr*, for the respondent.

MAYHAM, P. J.:

Two questions seem to be presented for our consideration on this appeal:

*First.* Was the defendant guilty of any negligence or breach of duty to the plaintiff's intestate which resulted in the injury of which the plaintiff complains?

*Second.* Was plaintiff's intestate free from negligence?

The deceased boarded a train at Cobleskill, which was a through train from that point to Albany, stopping at no intermediate stations between those two points, and was so designated on defendant's published schedules and time tables.

After the train left Cobleskill the conductor, in passing through the train collecting the tickets and fare of passengers, was handed a mileage book by the deceased, and at the same time informed by him that he desired to stop at Quaker Street, an intermediate station, at which that train was not permitted to stop, to which the conductor replied that he did not think that they would stop at Quaker Street; returning in a short time he said: "We will not stop at Quaker Street," but "will see."

The train proceeded on its way until after it passed Central Bridge station, when it was compelled to slow up or stop to allow a freight train going in the opposite direction to pass through a bridge on which there was not sufficient room for two trains to pass, and at this point the conductor said to deceased: "It is going pretty slow now, and it will be going faster, and you better get off now; that is all I have to say about it," whereupon the deceased stepped off between the freight and passenger trains, and was hit by the freight train, and so seriously injured that he died soon after. There was ample space on the opposite side of the passenger car from the freight train for the deceased to have alighted, and thus to have avoided all possible danger of being hit by the freight train, but

the evidence does not disclose whether or not he was aware of the proximity of the freight to the passenger car at the time he alighted. It is quite apparent that the defendant in running these trains was acting strictly within the lines of its duty, and that as to the manner of running the same it owed the plaintiff's intestate no duty or obligation which it did not fully perform.

Conductors in the running of railroad trains are properly held by their companies and the public to the most rigid and scrupulous observance of the rules and orders of the company in the management of their trains.

To have stopped this train in violation of that rule, without authority from the train dispatcher or other officer authorized to control the movement of trains, would have been such a breach of duty as would make the conductor amenable for injury resulting from such violation. Was the deceased misled by the statement of the conductor in his attempt to alight from the train, or coerced into such a hazardous step by the statement of the conductor, and if so, is the company liable for such acts or statements of the conductor ? It was known as well to the intestate as to the conductor, at the time the former left the train, that it was a through train, and that it was not allowed by the defendant to stop to enable passengers to alight after it left Cobleskill station until it reached its final destination at Albany, and that the incidental slowing or stopping for the purpose of allowing another train to pass was not for the purpose of enabling a passenger to alight, and that the conductor had no authority as the agent of the company to stop or slow a train to enable a passenger to alight until the train arrived at Albany, and the statement of the conductor to the deceased, at the time that he alighted, was not the demand or request of the company that the intestate must alight from the train, but simply a statement of the conductor, outside of his official control of the train, that that was the best opportunity intestate would have to leave the train before it reached Albany, and that it was not a command of the conductor as such to intestate to leave the train is evidenced by his concluding remark : " All I have to say about it."

It is clear, therefore, that the intestate, of his own volition, and without any fault of the defendant or its employee, and without looking to see what dangers he was about to encounter, carelessly

stepped from the passenger car to be hit and almost instantly killed by the train on the next track. In doing this act, for which the company was in no way legally responsible, he took the hazard of the consequences of his negligence, and it cannot now be imputed to the defendant. The defendant had given him no reason to expect that he could leave the train until it reached Albany, and if he saw fit to avail himself of the temporary slowing of the train as his opportunity to alight, we think that the risk of that act was assumed by him.

If we are right in our conclusion that the defendant was chargeable with no negligence or breach of duty towards the intestate, we might stop this discussion here ; but if wrong in that conclusion, then we must examine the facts to see whether or not the intestate was free from negligence on his part, or whether he, by his own negligence, contributed to the happening of the injury of which the plaintiff complains. ·

It has frequently been held that to alight from or to board a moving train is negligence *per se.* In *Hunter* v. *The Cooperstown & Susquehanna V. R. R. Co.* (126 N. Y. 23) GRAY, J., in delivering the opinion of the court, uses this language : " To alight from or to board a train in motion is a negligent and hazardous act, which can only be made to appear excusable, when in the situation of the person, he is under such a coercion of circumstances as to raise a fair question as to whether he was really in the free possession and use of his faculties and judgment."

In the same case on a former appeal (112 N. Y. 373–375) PECK-HAM, J., in delivering the opinion of the court, put and answered the following question : " The important question which arises is, does a man who is *sui juris,* and in the full possession of his faculties, with nothing to disturb his judgment, act with ordinary care in endeavoring to board a train moving at the rate of from four to six miles an hour ? It seems to me there can be but one answer to such a question. That it is a dangerous, a most hazardous attempt, must be the common judgment of all men. Persons are taught from their earliest youth the great danger attending upon an attempt to board or leave a train while it is in motion, and no person of mature years and judgment but has the knowledge that such an attempt is dangerous in the highest degree."

In that case, as in this, there was proof that the conductor suggested to the passenger to jump on the moving train, and the court, in disposing of that request of the conductor, says : " That notification certainly cannot be interpreted to mean more than that the train would not stop or go slower than it was then going, and that if the deceased wanted to take it he must jump on at that moment. *That does not alter the highly dangerous nature of the act itself.* The deceased was in absolute safety at the time the direction was given.    It created no emergency which called for the exercise of immediate judgment in the choice between two dangers."

So in this case, had the deceased remained on the train he would have been in a position of absolute safety.

But when the deceased determined to alight it was his duty to exercise caution in the attempt.    If he had looked he would have seen the approaching freight train, and there was nothing to prevent his alighting upon the opposite side of the car from that on which the freight train passed.    It was his duty to look and listen before alighting on the track of a railroad away from a depot, when trains were liable to pass and might be expected at any moment.    (*Halpin* v. *Third Ave. R. R. Co.*, 40 N. Y. Super. Ct. [8 J. & S.] 175–185; *Morrison* v. *Erie R. R. Co.*, 56 N. Y. 302.)

In this last case it is held that where facts are undisputed, negligence is a question of law.    The fact that the approaching freight train could have been seen in time to have avoided the injury had the deceased looked, is undisputed.

If he had looked he would have seen and escaped the danger, and not to have looked under such circumstances was negligence.    The judgment must be affirmed, with costs.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.