[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 304 
The plaintiff was a paying passenger upon the cars of the defendant, and it owed her the duty of taking her *Page 305 
up, carrying her and setting her down safely, so far as it was concerned therein.
There was testimony in the case, at every stage of the trial, upon which the jury had a right to rely; and relying upon which they had a right to find, that the train on which she was, did not stop at the station, at which she was to be set down, long enough for her to alight with ease and safety. Hence, the plaintiff made out so much of her case as consisted in showing that the defendant was negligent in its duty toward her.
There are undisputed facts in the case, however, which raise other important questions.
As the train approached the station at which she was to be set down, the conductor called out the name of it and then the train stopped. This was a notice and an invitation for her to get out. It was further notice that it was time to alight, and that time enough would be given therefor. The plaintiff and her parents, in whose care she was, prepared to do so, gathered their packages, and were on their feet in the passage-way between the seats. Up to this time it cannot be said that either party was lacking in due care. Before they got outside of the car, however, the train started sharply, and moved slowly by the station. In this, as before said, was the negligence of the defendant. The plaintiff, her father and her mother, while they were yet inside the car, knew that the train was moving; as she was of tender years and immediately under their care and control, their acts and conduct were her acts and conduct, and she is to be judged thereby. The train still moving, they passed out of the car on to its platform. It was evening and was dark. The train had passed away from the stationary platform, built at the side of the track, and on a level or nearly so, with the platform of the car. To reach the earth from the latter, a person must go down from off the steps thereof, still lower, on to the ground. He must for a space of time be in the air, without support either by hand or foot; he must, in fact, fall or drop from the moving train to the ground, with *Page 306 
the momentum downward of his weight, and the momentum forward, got from the motion of the car, these two not in accord. This the father of the plaintiff undertook to do; not only with his own weight making the descent alone, but holding the body of the plaintiff under one of his arms, having but the other to sustain and guide himself, thus laden; holding fast with his other hand to the railing of the car. He did this aware that there was danger in it. It was because he knew that it was dangerous, that he would not let the plaintiff undertake it alone, by reason of the train being in motion. He was not directed nor advised to attempt thus to alight; on the contrary, he was told not to; though he had then got so far in it as to have lost his balance, to be unable to recover himself and retake his step. He fell, still holding the plaintiff, and she was injured. Upon this state of facts, the defendant, by motion for nonsuit, and by exceptions to the charge given and to the refusals to charge, presents the question whether the plaintiff is chargeable with negligence contributory to the accident. The learned counsel for the defendant claims that the facts are such, as that as a matter of law, contributory negligence is shown, and that there was not a question of fact for the jury. He insisted that as matter of law, it is always negligence and want of ordinary care, for a person to attempt to get from off a car when it is in motion. Were I disposed to accede to this proposition upon principle, which I am not, I should feel myself precluded by prior decisions of this court, and influenced to a contrary conclusion by those of other courts. (Filer v. N.Y.C.R.R., 49 N.Y., 47, and cases cited;Penn. R.R. Co. v. Kilgore, 32 Penn. St., 292.) The rule established, and as I think the true one is, that all the circumstances of each case must be considered, in determining whether in that case, there was contributory negligence or want of ordinary care, and that it is not sound to select one prominent and important fact, which may occur in many cases, and to say, that being present, there must as matter of law have been contributory negligence. The *Page 307 
circumstances vary infinitely, and always affect and more or less control each other. Each must be duly weighed, and relatively considered, before the weight to be given to it is known. This is not to say, however, that in every case, it is a question for the jury of fact, or of fact and of law to be given to the jury with instructions. Where the facts are undisputed, the question of contributory negligence may become one of law, as the other questions which arise upon a trial, and are submitted to the decisions of the court on a motion for a nonsuit or otherwise. In this case, there are certain facts as to which there is and can be no dispute; and they are of such character and weight, that it is for the court to say, whether there is room for doubt or query, but that there was a complete absence of that care and prudence, without which in the direction of conduct, there is negligence. I am aware that it has been held more than once in this court, and more than once in other courts, that though an injury has been received by a passenger in alighting or passing from a car while it is in motion; yet it was a question for the jury to answer, whether there was a lack of ordinary care under all of the circumstances. (McIntyre v. N.Y.C.R.R.,37 N.Y., 287; 49 id., supra, and cases cited.) In those cases, the passenger was not left alone, to his own judgment and discretion. A direction or notification of some employe of the defendant, having authority or place upon the train, came in to influence the mind of the passenger, to remove apprehension of danger, to induce a sense of safety in action, and a failure to exercise the prudence which the occasion demanded; and it was as if the defendant had assumed the control and responsibility of the act; and so, there being no responsible volition by the passenger there was no damnifying negligence. And there, it was under the pressure of these affecting and controlling circumstances in the case, that the question was left to the jury to determine whether there was a failure to exert ordinary care and prudence. So inFoy v. L.B. So. C.R. Co. (18 Com. Ben. [N.S.], 225) the porter of the defendant directed the *Page 308 
alighting of the passenger where there was no platform. And that stress is to be laid upon this circumstance, is shown by the judgment in Siner v. G.W.R. Co. (L.R. [3 Exch.], 150; affirmed [Exch. Ch.], 4 id., 117). Though in Penn. R.R. Co. v.Kilgore (32 Penn. St., 232) there was no such fact; yet there were facts, which made the case quite unlike that here, and so characterized it as to render it appropriate to commit it to a jury. There, the passenger was a woman in feeble health, in a strange place, with her three young children in her charge. At dusk, the train had stopped at the station to which she had taken passage. She and her children had left their seats and passed out while the train was at a stand-still; two of the young folks had passed off; she was on the steps of the car with the other; by the starting of the cars, that one was thrown prone upon the station platform; at the instant, she leaped upon that platform and was hurt. It was a matter of impulse, not of thought, discretion and prudence, and plainly quite different from that in the case at hand. It is significant too, that in the charge in that case, exceptions to which brought up the case for review, the court said: "If the plaintiff had been in the car, or on the platform, when the train had started or was in motion, and was in a situation to choose between getting off or remaining on, and with a full consciousness of her danger, with foolish rashness, persisted in leaving the car in defiance of warning to the contrary, we would be compelled to tell you, as matter of law, that she could not recover." It is plain, that there was quite a different state of facts in this case, from that in Kilgore'scase and other cases above cited. Here, the plaintiff, or which is the same thing, her father, was not influenced by the command or direction of an employe of superior experience and practical judgment; he was not obliged to choose one of two courses, one of which might endanger himself or the plaintiff, and the other might expose others in his charge to want of care and protection; nor was he obliged to choose suddenly; he had time for thought, within the car and on the way out to *Page 309 
the steps of it; he knew that the train was in motion before he left the inside of the car, or essayed to get down; he not only knew that, but was then in full consciousness of the fact that there was danger in the attempt, for he would not suffer the child to undertake it by herself; and on the other hand, that there was at the most no danger, but only inconvenience in remaining on the train; knowing that there was danger in the attempt by one person, he doubled it or added to it, by loading himself with the weight of his child, and in such wise as to deprive himself of the use in the attempt, of one arm and one hand; he did not make the attempt when he had a structure to step out upon, level with that which he must leave, but when obliged, as he knew, to let himself fall to the ground, through some space, without support from anything during the lapse, and with no guidance, save the momentum of the drop and of that got from the forward motion of the car, forces acting at variance from each other, and neither tending to steadiness and uprightness of position. All of this was no result of impulse, or choice suddenly compelled. There was time for prudent choice, and correct apprehension of all the circumstances.
Now, it is certain, that but for the attempt of the plaintiff's father then to get down from out the car she would not have been injured as she was. His act, which was her act, in thus attempting, did contribute to the accident. Was it a faulty act in him? If it was, then it was such contributory negligence, as relieves the defendant from liability to her, for their negligence toward her. It was faulty in him, if it was such an act as would not have been done by one exercising the care for his person, which men of ordinary care and prudence for their safety and well being, are accustomed to employ under the same or like circumstances. Can it be said that a person of ordinary prudence and care, would have swung himself from a car in motion down to the ground in the dark, laden with the weight of a child twelve years old, having but one hand and one arm to aid himself with, when there was no other danger to be avoided by meeting this, and no *Page 310 
incentive to the act, other than the inconvenience of being carried by his place of abode, and with a full apprehension of the danger he was about to run? I think not. And I am of the opinion that it is so clear, that the law and the court should have given the answer without calling in the aid of a jury.Lucas v. N.B. T.R.R. Co. (6 Gray, 64), is, in principle, in support of the foregoing; as is also, Phillips v. Rens. Sar.R.R. Co. (49 N.Y., 177). And see also, Nichols v. Sixth Av.R.R. Co. (38 N.Y., 131).
The judgment should be reversed and a new trial ordered, with costs to abide the event.
All concur except CHURCH, Ch. J., and ANDREWS, J., dissenting.
Judgment reversed.