Beckwith, J.
It may be true, as was argued by counsel for defendant, and as the trial judge indicated, that the plaintiff was negligent in getting upon the train without inquiring whether it would stop at the place of his destination; and, on the other hand, it may be the case that the defendant was also negligent in not putting some one there to point out to passengers the trains their tickets entitled them to go upon; but the questions involved in these inquiries are immaterial.
The plaintiff was on the train with his ticket; he was not ordered to get off nor enabled to do so; his ticket was punched by the conductor, which, with no proof as to the object of that act, we may assume was done to prevent its being used again on that route, and the conductor while checking the plaintiff’s ticket, told him that just beyond the depot at Clarence, at about the place where the flagman’s shanty was by the switch, the train would slow up. To my mind those circumstances would indicate that the conductor did not object to his riding on that train, and that when the train should slow up the plaintiff should, or possibly could, jump off. Looking at the ticket and saying that it was the wrong train, but that the train would slow down at the switch near Clarence, were acts indicating that the plaintiff was not rejected as a passenger. At all events the circumstances required a submission of the question to the jury whether he was not accepted as a passenger. Although by the purchase of his ticket at Buffalo* no contract was originally made with the plaintiff to carry him on that train, yet the circumstances referred to, and the conduct of the conductor after examining the ticket, were evidence sufficient for consideration whether the defendant did not assume as to the plaintiff the relation of a carrier, and if it did, the moment that relationship was. taken upon itself by the defendant, the responsibilities of a carrier were also assumed, and even if in consequence thereof the conductor was not bound to stop his train at Clarence to let the plaintiff get off, yet he was bound not. to be a party to an act that would endanger the safety of the plaintiff while a passenger. Edgerton v. The New York and Harlem Railroad Co., 39 N. Y., 227.
And whether the conduct of the conductor was prudent and careful, regard being had to the safety of the passenger in the ptoposed attempt to get off, was a question for the jury. And assuming that it was not negligence, per se, to- *265 let the passenger get off when the train was in motion, the inquiry whether the plaintiff in attempting to alight, under the circumstances, exercised due care himself seem plainly to have presented a question for the jury. It appears that the plaintiff did not look for the conductor before getting off; that the conductor did not come to him; and it does not appear that the conductor desired to aid the passenger in his attempt to leave the train. It does appear that after passing Clarence station the train began to slow up as the conductor told the plaintiff it would; that the plaintiff noticed the fact, went out upon the platform at the end of the car; got down on the lower step and that while the train was slowing down, and when it was within a short distance of the switch, holding by the handle at the side of the car, he let himself off upon the ground, was thrown down and injured.
The evidence, in my opinion, was sufficient to be left to the jury upon the question whether the defendant, in this instance, did not approve and adopt the design to let the passenger off while the train was in motion, and whether the plaintiff was not as skillful and careful in the performance of his part of the undertaking as men ordinarily would be under the same circumstances. It may be noticed that on his cross-examination, in giving again his version of what the conductor said to him, the plaintiff omitted to state that the conductor told him that he could jump off when the train slowed down.
It is urged by the defendant’s counsel, and the trial, judge intimated the same idea, that this final statement of the plaintiff, being least favorable to himself, should be taken as the true version, and that upon such statement the conductor did not in fact direct or authorize the passenger to jump off the train when it should slow down. But it will be observed that by the questions put on cross-examination the attention of the witness was not called particularly to that part of his former statement, and that the question answered was, after the conductor had told him the train did not stop, “What was said first?” It is evident that the witness, in undertaking to repeat his talk with the conductor and undertaking again, if he did so undertake, to tell all that passed between him and the conductor, did still assume that some things he had said before were understood. For instance, in the same answer to defendant’s counsel he testifies: “He said this train does not stop until it gets to Rochester. He said they would slow up at the switch on the other side.” Did the witness mean or intend to say that the conductor meant on the other side of the Genesee river. The plaintiff having three times on his *266 direct _ examination positively stated that the conductor told him he_ could jump off, although he omits those words in his version given on the cross-examination, yet, taken in connection with the peculiar character of the question put on the cross-examination, it was for the jury to say what the witness meant without any rule of interpretation from the court. The whole testimony did not warrant the application of the rule that his last statement should be the exclusive one. It would be unsafe to let the decision of on issue on trial before a jury run into a process of mere technical criticism of words. The jury know what the witnesses mean. Besides, even upon his statement made on the cross-examination, it would seem probable that the conductor meant that he could get off there. He punched his ticket, and said his train did not stop there, but it would slow down at the switch near there. To my mind, that would signify that it would at that time be practicable to get off; but whether the words that he would slow up at the switch would mean that to me or not, it should at least have been submitted to the jury to say whether they meant anything or not.
The plaintiff’s counsel took an exception to a ruling by the court excluding the plaintiff’s offer to show that after the accident the train was stopped, and the conductor and others came back to the spot where the plaintiff was lying on the ground, and that there and then the conductor admitted that he had told the plaintiff that he could jump off there. It is hardly necessary to pass upon the question in the view I take that upon the remaining evidence there was a case for the jury. Nevertheless it may be said that upon the authority of the luminous opinion delivered by Earl, J., in Wadele v. N. Y. C. & H. R. R. R. Co. (95 N. Y., 274), the ruling of the court» seems entirely correct. ’
The non-suit must be set aside and a new trial granted, costs to abide the event.
Titus, J.
This is a motion for a new trial on exceptions ordered to be heard at the general term in the first instance.
At the close of the plaintiff’s case the defendant moved for a non-suit on the ground .that the plaintiff was guilty of negligence, and that there was no evidence upon the question of defendant’s negligence producing the injury, and on the further ground that the plaintiff did not get off the train at the place indicated by the conductor.
I think the facts in this case should have been submitted to the jury, both upon the question of negligence of the defendant, and of the contributory negligence of the plaintiff.
It appears that on the 30th day of June, 1886, the plaint *267 iff started to go to Clarence on the line of the defendant’s railroad to make a visit. He went in the defendant’s depot, purchased a ticket for Clarence, and went out into the yard where the train was, and got on the train, which lie supposed was the right one, and stopped at Clarence. Ho other train was there, and nobody directed him what train to take, or told him that the train did not stop at Clarence. After the train had passed East Buffalo the conductor came around, punched his ticket, and informed him that the train did not stop at Clarence, and would not stop until it reached Rochester. He asked the conductor to stop the train at Clarence and let him off. The conductor said he could not stop the train at Clarence, but they would slow down at the switch and he could or should get off. When the train reached Clarence the plaintiff went out on the platform, and got down on the lower step. The train slowed down, and when the engine was “right 'by the switch-house ” he took hold of the iron bar on the rear end of the car and swung himself backwards from the direction in which the train was moving, and put his right foot on the ground and jumped; in doing which he received the injury complained of. It further appears that the train was an express train, and does not make regular stops at Clarence, but of this fact the defendant had no knowledge.
It was suggested on the trial that the plaintiff was guilty of negligence in getting on to this train without making inquiry as to whether the train stopped at Clarence. He bought his ticket at the office in the depot; this was the only tram standing there, and.he might very properly suppose that if the defendant sold him a ticket, while this was the only train in waiting, that it was the train for him to take; or if not, that some one of the defendant’s employees would indicate that fact to him. But whether or not it was negligence, under the circumstances, for the plaintiff to get upon this train, after he was once on, and the train was under way, the defendant had no right to advise him to get off while the train was in motion; and if he acted on such advice, believing from what the conductor said that he could safely do so, and was injured, then the defendant would be guilty of negligence, and the plaintiff’s negligence, if any there was, in getting on the train at the depot, cannot avail the defendant to shield it from its subsequent negligent conduct; nor can the plaintiff be said, by this remote act, to have contributed to the injury Healey v The Dry Dock R. Co., 46 N. Y. Supr. Ct.,473, Clark v. N Y., L. E. and W. R. R. Co., 40 Hun, 606.
Under the rule laid down by the court of appeals, the defendant was guilty of negligence in advising the plaintiff *268 to get off from the train while in motion. Filer v. N. Y. C. R. R. Co., 49 N. Y., 47.
If the conductor wanted the plaintiff to get off he should have brought his train to a stop, and should not, by his advice or suggestion, have induced him to get off while the train was. moving, although he had slowed down for that or some other purpose.
It seems the plaintiff pursued the usual course in alighting. He swung his body back to overcome the momentum of the train, holding on to the supports, and letting himself down, so that his right foot could touch the ground before-letting go.
It is not clear what other course he could have adopted to insure greater safety. Although the learned judge who tried the cause seemed to think he should have jumped forward, I think the rule is well settled that the jury should have been allowed to pass upon all of the facts, and determine whether under the circumstances the plaintiff acted in a prudent and proper manner in getting off from the train, and whether, under the circumstances, it was negligence in the plaintiff to get off at all while the train was in motion. Morrison v. The Frie R. R. Co., 56 N. Y., 302; Bucher v. N. Y. C. and H. R. R. R. Co., 98 id., 128.
It is claimed by the plaintiff, and the evidence tends to show, that the plaintiff left the train just as the engine was opposite the switch indicated by the conductor to the plaintiff, and whether he left the train at the precise spot indicated to him, was properly for the jury to determine.
It follows that the order granting a nonsuit should be set aside, and a new trial granted, .with costs to abide the event of the action. _