(22 App. Div. 599.)

CAMPBELL v. WOOD.

(Supreme Court, Appellate Division, Third Department. December 7, 1897.)

1. NEGLIGENCE—UNUSUAL DANGERS.
   A driver of an express wagon in a crowded street cannot be charged with negligence in failing to observe a leg wire temporarily stretched across the street, while an electric lamp is being cleaned, though the wagon strikes the wire, and injures the lamp cleaner.

2. CONTRIBUTORY NEGLIGENCE—FAILURE TO WARN OF DANGER.
   An electric lamp cleaner, in lowering a lamp hanging over a street, had to leave a leg wire stretched over a portion of the street. He saw three wagons, one behind the other, coming towards him, and he told the drivers to go on the south side of the lamp. He then turned his back to the wagons, while trimming his lamp. The drivers of the two first wagons heard and heeded the direction, but the third did not hear it, and his wagon struck the wire, and injured the lamp cleaner. *Held*, the lamp cleaner was guilty of contributory negligence.

Appeal from special term.

Action by Frank Campbell, an infant, by Charles F. O'Brien, his guardian ad litem, against Theodore F. Wood, as treasurer of the United States Express Company. From a judgment for plaintiff, defendant appeals. Reversed.

This action was brought to recover damages for injuries sustained by the plaintiff in consequence of the alleged negligence of an employé of the defendant on the morning of the 5th day of December, 1894. The plaintiff at the time was in the employ of the Binghamton General Electric Company as lamp trimmer, and, when injured, was engaged in trimming an arc lamp located near the middle of Court street, in the city of Binghamton, opposite to its intersection with Wall street. Court street is 39 feet 3 inches from curb to curb. There are two street-car tracks in the center thereof, and from the north rail of these tracks it is 11 feet 6 inches to the north curb of the street. The lamp in question was located above the north track of the street railroad. To trim the lamp, it was necessary for the plaintiff to let it down, the top of the lamp being about 8 feet from the ground. On it was a crossbar of wood, to which were attached two leg wires, each about one-quarter of an inch in diameter, extending to a pole on Wall street 43 feet distant. On the morning in question, the plaintiff

had lowered the lamp for the purpose of trimming it, and the leg wires extending from its top across the street hung at the lowest point, about 6 feet from the ground, and then ascended to a bracket 19 feet high, on the pole on Wall street 43 feet distant. The plaintiff stood with his face to the south, and while engaged in his work, with his hands inside of the glass globe, noticed three wagons coming from the east down Court street. The first vehicle, a covered phaeton, was about 50 feet distant. This was followed by another covered wagon. The third vehicle was a one-horse delivery wagon, belonging to the defendant, with a top about 8 feet and 7 inches high, driven by one Bliss, defendant's employé. The plaintiff's version of the transaction is as follows: "I first noticed these wagons when they were opposite Sanders. I noticed three, one behind the other. The one nearest me was a two-seated phaeton, with one horse. I didn't notice the next. It was a carriage of some kind, but I didn't notice, and the express wagon was last. That was higher than any of the rest of them. They were coming towards me at that time on a slow trot. I turned, and told them to look out for the wires, to go to the outside of the lamp, on the south side. They started on the south side of the lamp, and I went on trimming my lamp. I was caught in the lamp about the next thing I noticed. I watched the horses going by, on the south side, in front of me. When the first wagon was quite a ways past, and the second one hadn't but just barely passed the lamp,—the wagon, I mean,—when he catched the wire. The top of the express wagon struck one of those leg wires,—the west wire. It jerked the lamp a quick jerk. I had my hand down underneath the globe, and there was a small chunk broke out of the globe; and it kept dragging me right along. My hand was fast. As soon as my hand struck this sharp globe, I was dragged along to the hind end of the wagon, against the wheel; and the lamp and globe were right against the wagon too,—very near it; against the side of the top of the wagon. The wagon did not stop at all, but kept right on going until the wire broke, and let the globe back again, and it freed me from the lamp; and the wagon kept right on. I noticed the horse and driver, and the horse was going at a rapid speed. The horse wasn't running as fast as he could go, but he was still on a jump." The plaintiff obtained a verdict for $7,000, which was reduced by the court below, the plaintiff consenting, to $4,000; and, a judgment for that sum and costs being entered in his favor, the defendant has appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Tracy, Boardman & Platt (Benjamin F. Tracy, George B. Curtiss, and James R. Soley, of counsel), for appellant.

Rollin W. Meeker (Edmund O'Connor, of counsel), for respondent.

PUTNAM, J. The plaintiff, to maintain his action, was compelled to show that the injury for which he sought to recover damages was caused by the negligence of the defendant's employé, and also the absence of negligence on his part contributing to the injury. We are unable to believe that negligence could be properly attributed to the driver of the express wagon, lawfully traveling on the public highway, for failing to observe the leg wire which the plaintiff had placed across it. One using a public street has no reason to apprehend danger, and is not required to be vigilant to discover dangerous and unusual obstructions. Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095; Jennings v. Van Schaick, 108 N. Y. 530, 15 N. E. 424; McGuire v. Spence, 91 N. Y. 303; Brusso v. City of Buffalo, 90 N. Y. 679.

There is no reason to discredit the uncontradicted testimony of the driver that he did not hear the warning given by the plaintiff, or see the wire. His view was obstructed by the two wagons in front of him. He was driving a third wagon. The three wagons would nat-

48

48 NEW YORK SUPPLEMENT (Sup. Ct.
and 82 New York State Reporter.

urally make some noise, and it is not an improbable statement that, while the drivers of the two front wagons heard the warning, the defendant's servant, in the express wagon in the rear, did not. Besides, he was lawfully engaged in his business of picking up express packages, and was properly attending to that business, and to the ordinary duties of a driver, in a much-traveled public street, watching for other vehicles or for any ordinary obstacle in the street. It does not appear that he had ever passed that locality before when the lamp was lowered and the leg wire placed across the street. While the driver of a vehicle passing along the street in question might observe a wire stretched across it, we are unable to believe that negligence, under the circumstances appearing in this case, could be attributed to him in failing to observe it. His attention, as suggested, would naturally be drawn to the ordinary obstacles in a crowded public place. He would not be called upon to anticipate or watch for danger arising from an unusual obstruction, of which it does not appear he had any previous knowledge.

The plaintiff testified that, when he first saw the wagon, the horse was coming at a slow trot. It does not appear that he afterwards noticed the vehicle before it struck the wire. He subsequently testified that the horse was going at a rapid speed, not as fast as he could go, "but he was still on a jump." This testimony, we infer, must refer to the speed of the horse after the wagon struck the wire, and the animal, feeling the obstacle caused thereby, sprang forward. However that may be, it has been held that driving at a rapid speed in the street of a city is not negligence in fact or law. Crocker v. Ice Co., 92 N. Y. 652. The defendant's employé, Bliss, was lawfully proceeding along a public street, and the only negligence on his part shown was a failure to observe an unusual obstacle in the street, of which, as suggested, it was not shown that he had any previous knowledge, which he was not called upon to anticipate, and which he naturally, in attending to the ordinary duties of a driver in a crowded street might not see. As we have seen, there were two top vehicles in front of the defendant's wagon. These two wagons would prevent Bliss from observing the wire, which the proof shows sagged down to within six feet of the ground. When those wagons turned south, the horse Bliss was driving must have been near the wire, and have so obstructed his view that he would not probably see it. The evidence, certainly, is as consistent with freedom from negligence as negligence; and, under such circumstances, the jury should "not be left to a mere conjecture, or to act upon a mere possibility." See Taylor v. City of Yonkers, 105 N. Y. 202–209, 11 N. E. 642. We think, on the uncontradicted evidence, the plaintiff failed to show actionable negligence on the part of the defendant's employé.

It remains to be considered whether the plaintiff established the fact on the trial that his own negligence did not contribute to the injury. We assume that the city of Binghamton might lawfully authorize the Binghamton General Electric Company to place the lamp where it was located, and, when necessary to clean it, to temporarily obstruct the street with the leg wire which caused the accident. But such license did not permit the said company to thus obstruct the

street without taking proper and necessary precaution to prevent injury to those lawfully traveling thereon. Unless such precautions were taken, the obstacle would become a nuisance, and the city itself, had it authorized such obstruction without such precautions being taken, as well as the Binghamton General Electric Company and its employés, would become liable for damages caused thereby. Did the said company and the plaintiff, its employé, in placing the wire across the public street, which prevented the passage of vehicles with tops at the time of the accident, take proper precautions to prevent accident? We think not. The plaintiff, the employé of the Binghamton General Electric Company, knew that the wire was a dangerous obstruction in the street; that it was one that might not be observed by a traveler thereon. His duty was to take proper precautions that such an accident as was caused by his thus obstructing the street should not occur. He saw three wagons approaching. His duty was not fully performed by the warning he gave. The defendant's driver did not hear that warning. It was reasonable to suppose, being in the rear of two other wagons in a public street, that he might not hear it. Proper care required the plaintiff to observe whether or not each of the drivers of the three wagons did hear the warning. Had he waited a moment, and observed the express wagon approach, the accident would not have occurred. The driver of the wagon, in fact, had no notice of the obstruction in the street. We think a duty of active vigilance devolved upon the plaintiff, under the circumstances appearing in this case, which compelled him to give notice of the obstruction he had placed in the street, and to observe whether that notice was heard by the defendant's employé, and which duty was not satisfied by his giving a warning, and then turning his back to the approaching express wagon, without knowing whether the driver heard it or not. He was bound to give to the defendant's employé an effectual warning. We hence reach the conclusion that the plaintiff failed to show the absence of contributory negligence on his part.

It is suggested by the respondent that, under all the circumstances of the case, the question as to the contributory negligence of the plaintiff was for the jury; but it has been held that, where the facts are practically undisputed, the question of contributory negligence may become one of law. Morrison v. Railway Co., 56 N. Y. 302; Cordell v. Railroad Co., 75 N. Y. 330; White v. Sharp, 27 Hun, 94, 97 N. Y. 640. We think, on the undisputed facts in this case, the plaintiff failed to show the absence of contributory negligence on his part, and hence there was no question in that regard that should have been submitted to the jury.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.