The judgments of the common pleas and police courts will be reversed, and remanded to the police court for a new trial before a competent jury.

*C. D. Saviers,* for plaintiff in error.

*J. M. Butler, G. S. Marshall, C. E. Carter* and *J. G. West-water,* for defendant in error.

---

## JUMPING FROM A MOVING TRAIN.

[Circuit Court of Lucas County.]

CAROLINE E. BETTEN v. THE TOLEDO & OHIO CENTRAL RAILROAD COMPANY.

Decided, October 6, 1906.

*Negligence—Stepping from a Moving Train is Negligence Per Se, When —Choice Between Perils—Questions for the Jury Developed by the Evidence—Inconsistency Between Plaintiff's Story and the Argument of Her Counsel—Charge of Court—Challenging Jurors—Reproof of Counsel by the Court.*

1. It is negligence *per se* for one to jump from a moving train, after having been warned by the conductor not to do so, unless there is some fact made apparent by the evidence which in the opinion of a jury might excuse such conduct.

2. The overruling of a challenge of a juror for cause will not be regarded as prejudicial error, where the party claiming such error failed to exercise all the peremptory challenges allowed him by law.

3. A reviewing court can not say that a trial judge was guilty of misconduct in rebuking counsel or disapproving of some action on his part, where so far as is disclosed by the record the judge may have spoken pleasantly and with no tendency to prejudice counsel or his case.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This is a proceeding in error, brought to obtain a reversal of the judgment of the court of common pleas of this county. In the court below, Caroline E. Betten brought her action against the Toledo & Ohio Central Railroad Company to recover damages on account of personal injuries by her sustained, which,

she charged, were due to the negligence of the defendant.   On the 14th day of August, 1904, she was a passenger on one of the defendant's trains, traveling from the city of Toledo to her home at Lime City, some ten miles south of Toledo.  She had paid her fare and was entitled to all the care and protection due from a common carrier to a passenger.   It was an excursion train, consisting of several cars, apparently very fully loaded. She was traveling with some relatives, who were also adults, and one had an infant child in her charge.

The plaintiff was a woman about forty years of age, apparently in the prime of life, and in good health.   She charges in her petition that the train was stopped at the station of Lime City, for the purpose of allowing passengers to alight therefrom; that a part of the passengers on said train had alighted after the said train had stopped, and plaintiff was in the act of alighting from said train, when the officers and agents of the defendant, in charge of said train, wrongfully, carelessly and negligently  caused said train to be started in such manner that plaintiff was thrown violently upon the stone pavement composing the platform maintained by the defendant at said station.   Plaintiff says that the defendant was careless and negligent in that it caused said train to be set in motion when the officers and agents of the defendant having charge of said train, knew, or should have known, that plaintiff was in the act of alighting therefrom.   Plaintiff said she did not know, and had no means of knowing, that said train would be set in motion, and was without fault upon her part, contributing to the injuries she received; then follow the averments as to the injuries.   And there was evidence tending to support her claim of negligence upon the part of the railroad company, and of an absence of negligence upon her part, and that she received serious injuries.

The defendant company denied that it had been guilty of any negligence, and averred that the plaintiff was guilty of contributory negligence.   The case was tried to a jury, which returned a verdict in favor of the defendant.   A motion for a new trial having been overruled, the plaintiff below prosecutes error here.

That the plaintiff was a passenger, that she was traveling on the train; that the train stopped at Lime City, that she attempted to alight, that in alighting she fell or was thrown down, stands undisputed. It is also undisputed that the train stopped for the purpose of permitting passengers to alight, and that while the plaintiff was attempting to pass from the cars to the platform, the train started again. It seems that the conductor of the train was about this time very busy taking up the tickets of the passengers, and that the duty of the starting of the train was being performed by a brakeman, who was out on the platform, and that he signalled for the train to start before Mrs. Betten had a chance to alight from the train, perhaps supposing that all the passengers had alighted; at all events, there is no evidence that he observed that she had not alighted when the signal was given for the train to start.

Nevertheless we think that the jury were authorized in finding upon the issue of the alleged negligence of the company that it was guilty of negligence, as charged; that it devolved upon the company, through its servants, to ascertain whether all the passengers who were attempting to alight, had reached the platform in safety, before it permitted the train to be started up again.

It seems that the train, when it started up, advanced about ten feet and was then stopped again and the stopping again appears to have been because of a signal given by the conductor of the train, he having observed the predicament of the plaintiff as she was about to alight, pulled the bell rope and the train was stopped within a very few feet of where it started.

The plaintiff contends, and as she relates the facts of this accident it appears, that she was just in the act of stepping from the platform, just swinging herself from the train when the train started and threw her down. On the part of the railroad company it was contended, and there was evidence upon the trial tending to show that when the train was started upon the signal given by the brakeman, Mrs. Betten was upon a platform of one of the cars, rather upon one of the steps leading from the platform of the car; that the conductor observed, or was apprehensive that she was about to attempt to alight, and

that he called to her not to jump; that he immediately pulled the bell rope, giving the signal for the train to stop; but that notwithstanding the fact that the train was in motion, and that she had received this warning from the conductor, she jumped from the train and so was injured. And the verdict of the jury indicates that that is the state of facts they found to be true. It is not comprehensible upon any other theory; they must have found that that was the way the accident occurred.

With respect to that assumed state of facts, which the testimony tended to establish, a charge was given by the court, of which the plaintiff in error makes serious complaint, to the effect that one alighting from a train under such circumstances would be guilty of negligence *per se;* in other words, would have no right of recovery. I read that paragraph:

"The defendant claims that the plaintiff, when upon the platform of the car, was warned by the conductor that the train was in motion and that she should not leave the car; that by not regarding the warning so given, knowing that the car was in motion, and jumping from the car or leaving the car while it was in motion, and without regard to the warning that was given, the plaintiff was guilty of a negligent act without the commission of which she would not have been injured; in other words, by leaving the train under the circumstances that she did, having had warning that she could not leave it, and knowing that it was in motion, she was guilty of contributory negligence. I will say to you that if you find from the evidence in this case that the plaintiff, knowing that this train was in motion, was warned by the conductor in charge of the train, and told not to leave the train while it was in motion; if a warning was given in that way, and under such circumstances as she understood it, and, notwithstanding such warning and such knowledge on her part, she leaped from the train, she can not recover in this action. Such conduct on her part would constitute contributory negligence, because it was her duty, if she knew this train was in motion and that the conductor of the train forbade her to leave the train at that time, to observe the warning and refrain from leaving the train, and if she did not do so, she in law can not recover in this case, although you may find from the evidence that the defendant company was negligent in starting the train before she had time to alight."

It is insisted by counsel for plaintiff in error that the weight of authority is to the effect that one alighting from a moving

train is not guilty of negligence *per se;* but that such action creates a presumption of negligence, a *prima facie* case of negligence, which is rebuttable, and which may be overcome by the circumstances attendant upon the act; that is to say, whether it would be negligence or not would depend upon other circumstances than the mere circumstance of attempting to alight from the moving train; and that this is so, even though the additional circumstance of a warning from the conductor accompanies the incident; and a great many authorities are cited in support of this contention. On the other hand, very respectable authorities are cited in support of the proposition that it is negligence *per se* to attempt to alight from a moving train.

We think, however, that the better rule, and the rule supported by the great weight of authorities, is that contended for by plaintiff in error, that the question is to be submitted to the jury, if the circumstances are such as might, in the judgment of reasonable men, excuse the act of attempting to alight from a moving train. In other words, if the judgment of reasonable men would not all agree upon the proposition, it should be submitted to the jury; that there may be circumstances under which one would be entirely justified in attempting to alight from a moving train, rather than remaining upon it. One of the cases cited by counsel for defendant in error, is that of *Morrison* v. *Railway Company,* 56 N. Y.; 302, and in the course of the decision, Judge Folger says (page 306):

"The learned counsel for the defendant claims that the facts are such as that, as a matter of law, contributory negligence is shown, and that there was not a question of fact for the jury. He insisted that as a matter of law, it is always negligence and want of ordinary care, for a person to attempt to get off a car when it is in motion. Were I disposed to accede to this proposition upon principle, which I am not, I should feel myself precluded by prior decisions of this court, and influenced to a contrary conclusion by those of other courts (*Filer* v. *Railway Co.,* 49 N. Y., 47, and cases cited; *Penn. Ry. Co.* v. *Kilgore,* 32 Penn. St., 292).. The rule established, and as I think, the true one, is, that all the circumstances of each case must be considered in determining whether in that case, there was contributory negligence, or want of ordinary care, and that it is not sound to select one prominent and important fact, which may

occur in many cases, and to say, that being present, there must, as matter of law, have been contributory negligence. The circumstances vary infinitely and always affect and more or less control each other. Each must be duly weighed and relatively considered, before the weight to be given to it is known. This is not to say, however, that in every case, it is a question for the jury of fact, or of fact and of law to be given to the jury with instructions. Where the facts are undisputed, the question of contributory negligence may become one of law, as the other questions which arise upon a trial, and are submitted to the decisions of the court on a motion for non-suit or otherwise.''

Then the learned judge proceeds with a discussion of the facts of the case he was deciding, and concludes that as a matter of law in that case the plaintiff in error was guilty of negligence *per se.*

As I have indicated, we are not prepared to affirm as an abstract proposition that one who jumps from a moving train even after being warned by the conductor to not do so, is guilty of negligence which would preclude a recovery for injuries so received. But what is charged in this case we are not authorized to regard as being charged as an abstract proposition. It is to be read and construed in connection with the facts of the case *as developed by the evidence;* it must be applied to the facts of the case and it must be applied here as if the court had added ''unless from other circumstances shown by the evidence in the case it appears to you that an ordinarily prudent person under the same circumstances would have jumped from the train, notwithstanding the moving of the train and the warning.'' That, of course, would have so modified it as to make it a charge that the jumping from the train made but a *prima facie* case of negligence.

But the question of whether the court erred in not adding that qualification must be tested by an examination of the evidence to ascertain whether there were any circumstances shown to which the qualification might have been properly applied by the jury; whether there was anything in the circumstances that would have justified the jury in finding that Mrs. Betten was not guilty of negligence, even though she jumped from the train while it was moving, and after being warned by the con-

ductor not to do so. I repeat, an excuse for doing an act that without excuse therefor would be *per se* negligence, must be found in the evidence, and not raised by imagination or conjecture of circumstances that might have accompanied the act. In this case Mrs. Betten is a witness in her own behalf, and she tells her story very briefly at page 36 of the record. After some questions leading up to this, she is asked:

"Q. What occurred when the train reached Lime City? A. My daughter got off ahead of me and I was following, and when he called 'Lime City,' I was right back of my daughter, and after she got off I was just stepping off when the train gave a jerk and threw me, and, of course, that is the last I remember.

"Q. Had the train come to a stop to let passengers off? A. Yes.

"Q. Did you know the train was about to start up again? A. No; I did not think it would start. ·

"Q. Do you know how you fell? A. I know I struck my head and my back."

Those are answers as to how it came about that she was thrown; according to her own story, she was not aware that the train was moving when she attempted to alight, and she was in the very act of alighting from the car when the movement of the car in starting up threw her so that she fell.

Counsel for plaintiff in error, in his brief, says:

"In this case Mrs. Betten was compelled by an act of the defendant to elect between an alternative danger, namely, she was obliged to decide in an instant whether it was safer for her to step from the slowly moving train to the ground below, or to incur the peril of remaining on the platform of the train until, as she believed, the train had reached the next station, or the peril of returning to the place in the car which she had occupied before the train reached Lime City. The negligent act of the company's servants in starting the train interfered to some extent with her free agency, and the slowly moving train, negligently started as it was, created a confidence that the attempt could be made with safety; much more safety than would have been in her remaining on the platform of the train, or turning around and climbing the steps in an attempt to return to the position in the car which she had formerly occupied."

This is altogether inconsistent with Mrs. Betten's own story. According to her story, she was not put to any election between

perils, and her mind was not agitated by a consideration of the so-called peril of being carried forward by the train, and her free agency was not interfered with in any respect. She was alighting from a train which had stopped and which she did not anticipate would be started, and was thrown by the train suddenly starting up as she was in the act of alighting.

Again, counsel says: "In the case at bar, Mrs. Betten was, by the wrongful act of the railroad company, placed in a position of peril, and the sudden impulse to step from the train, or jump, notwithstanding the warning of the conductor, was not unnatural to a woman under such circumstances;" though Mrs. Betten swears most positively that she heard no warning from the conductor. And counsel says: "In this case we have not a man, but an infirm and nervous country woman, actually on the steps of a train which had just begun to move, while her husband and all her friends were on the ground, and she without protection, reasonably believing that she was about to be carried away, jumps off of the steps. Mrs. Betten had many times more reason to be frightened into jumping off than did the man in the Michigan case."

But according to the facts deduced in evidence here on behalf of the plaintiff, she was not then an infirm and nervous woman; but she was a woman in good health, in the prime of life, doing all her own work; indeed, helping about the farm work; though there is evidence tending to show that since then, and because of the injury she received at that time, she has become infirm and nervous. And all that is said here about her apprehensions of being carried forward, and of her acting upon the impulse and choosing between perils, etc., is entirely inconsistent with her claim and her story. It is imaginary if tested by her story. In other words, it is a conjecture of a state of facts that might have existed but not a state of facts which she relates and relies upon.

At the same time, there is evidence in the case, which the jury must have considered and which the jury must have believed, tending to show that her story in this regard is incorrect, and that the truth lies nearer to the supposed case set forth by counsel in his brief. Upon this question, how

far the jury would be required to go to reconcile the two stories, we need not express any opinion. They appear to us to be irreconcilable; but the jury would be authorized to consider other circumstances in evidence, even though they were circumstances not related by the plaintiff, and even though they were circumstances which, in the opinion of the jury, tended to contradict the story of the plaintiff. But the jury would not be authorized to go outside of the evidence for conjectures or imaginary cases or circumstances.

I have pointed out that counsel for plaintiff in error argued along the line of the plaintiff being compelled to choose between perils, compelled by the wrongful act of the defendant to make such choice.

We do not regard this as a case of that character. The jury may have been authorized to find that she was called upon to choose between the apparent peril of jumping from the train and the inconvenience of being carried beyond the station; but there was no peril in that; that is to say, it is not apparent from the evidence that there was any peril in that, and it is not properly so denominated, it does not come within that category of cases, it is not apparent, it is not shown that this possible inconvenience preyed on the plaintiff's mind, so as to impair its normal functions, or that she was paralyzed by fear, or felt so confused, distressed or excited, that she could not weigh or consider dangers and inconveniences; of that we find no hint appearing in the evidence that would authorize the jury to make such a finding. Had they so found it would be upon pure imagination or conjecture. Taking the most favorable view admissible of the plaintiff's story, taking it as shown by the evidence, as we are bound to do in considering whether the jury should have been permitted to consider any circumstances that might have excused her action, we can not see that there is anything that would have justified the jury in finding that she was free from contributory negligence. In other words, we are of the opinion that unless there is some fact made apparent by the evidence to excuse such conduct, that it is negligence *per se* for one to jump from a moving train, after being warned by the conductor of the train not to do so. There may be cir-

cumstances that would excuse such action; but we have no such circumstances related or set forth or made apparent in the record in this case; and therefore, in so far as this charge contained an abstract proposition which was wrong, we can not see that it was in any way prejudicial to the plaintiff in error. We find that there was no error in the charge when applied to the facts of the case, no excuse for such action being shown or claimed even by the plaintiff herself, the jury having found, as they were bound to do under this charge, and as they must have done, that she jumped from the train while it was in motion, while she knew it was in motion, after she had been warned by the conductor not to do so, after she had heard the warning, and without any other excuse than to escape the inconvenience of being carried beyond her station. We think, as applied to that state of facts, there was no error prejudicial to the plaintiff in error; so that the judgment will not be disturbed on that ground.

The other matters complained of I will pass over by merely mentioning them. It is complained that there was error in the overruling of a challenge of a juror for cause. The juror stated that he was working, or had worked, perhaps was then working for the Lake Shore Railroad Company, which, he understood, had some connection with the Ohio Central Railroad Company, and he preferred not to sit as a juror. He was challenged and the court held that that did not amount to a cause of challenge, and it was overruled; thereupon he was peremptorily challenged by the plaintiff. In view of the state of the record, we are not now considering whether this was a good ground for challenge for cause or not, because the plaintiff still had left unused, and which were not used at all upon the trial, three peremptory challenges; and even if the court was in error upon this matter, there was nothing there prejudicial to the plaintiff in error.

Counsel for plaintiff in error complain that the court below, or the trial judge, was guilty of misconduct in rebuking counsel, or disapproving of some action on the part of counsel, in such way as to prejudice him and his cause before the jury. We have looked into the matter; there seems to be something in it as

counsel depicts and emphasizes it; but, of course, we can not find that on the record. For aught that appears, whatever was said was said pleasantly and suavely and had no tendency to prejudice counsel or his cause.

We can not say that this verdict is against the weight of the evidence; we shall not stop to enter into a discussion of the evidence; it is so evenly balanced that we would not be justified in disturbing the verdict upon that ground.

The judgment of the court of common pleas will be affirmed.

*Charles A. Thatcher*, for plaintiff in error.

*Doyle, Lewis & Schaufelberger*, for defendant in error.