KRESANOWSKI *v.* NORTHERN PAC. R. Co.

(*Circuit Court, D. Minnesota.* October 4, 1883.)

PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE—VOLUNTARILY ASSUMING A POSITION OF DANGER.

 The plaintiff was employed by the defendant railroad company in excavating, and was sent with others to the place of work on an engine provided by the company for that purpose. The tender being full of wood, he, with one or two others, sat on the front of the engine, with his feet over the pilot. While proceeding to his work in that position, the engine on which he was riding ran into another engine, and the plaintiff received the injuries for which he seeks damages. On motion to the court to instruct the jury to find a verdict for the defendant, upon the ground, with others, that the evidence showed contributory negligence which would bar a recovery, the court, following the law as laid down by the supreme court in *Railroad Co.* v. *Jones,* 95 U. S. 439, *held,* (1) that the plaintiff himself so far contributed to his injury by his own negligence and want of ordinary care and caution in placing himself in such a dangerous position on the engine of the defendant, that he could not recover; and (2) that the plaintiff being of age, and able to see and know the risks of the position, even the fact that he had been invited and authorized by the defendant to ride upon the engine, would not justify him in his negligence in placing himself in a position of apparent great risk and danger.

Action brought to recover damages under the following state of facts:

The plaintiff, who was employed in excavating by the defendant, was

sent with others to his work on an engine. The tender being full of wood, he, with one or two others, sat on the front beam of the engine with his feet over the pilot. While proceeding to the work in that position, the engine on which he was riding ran into another engine, and the plaintiff was badly crushed in the collision, and one leg had to be amputated. The foreman of the gang was not present, and the engine was furnished by the company for the convenience of this gang of men, the distance to the work being from a mile and a half to three miles. At the conclusion of the plaintiff's case, defendant's counsel moved the court to instruct the jury to return a verdict in favor of the defendant, upon the ground that the plaintiff had failed to establish a cause of action against the defendant; and upon the ground that the evidence showed contributory negligence on the part of the plaintiff which would bar a recovery.

*C. K. Davis*, for plaintiff.

*W. P. Clough*, for defendant.

SHIRAS, J. I have considered, gentlemen, this motion that has been made asking the court to instruct the jury to find a verdict for the defendant, which has been presented and urged, mainly, on two grounds: *First*, that the evidence of the plaintiff shows that the accident, and the injury following it, were caused by the negligence of a co-employe; that the general rule is, where a person enters into the employment of a railroad company, that being a hazardous and perilous business, he undertakes all the ordinary risks that pertain to that business, and that among the risks which he thus takes upon himself are the dangers or risks from the negligence of a co-employe; and it is urged that the uncontradicted evidence shows that the accident in this case was due to the neglect of a co-employe,—that is, of a person who was engaged in the same common employment with the plaintiff; and that, as it was due to the negligence of a person standing in that position, under the general rule of law the plaintiff cannot recover. It is also urged that the evidence shows that the plaintiff, by his own action, placed himself in a dangerous position that contributed directly to the producing of this action; that is to say, that he got upon the pilot of this engine and rode there; that that was contributory negligence upon his part, and of such a character as to defeat his right of recovery in the case, under the evidence as it is now presented before the court.

I will present my views first upon the latter proposition in this case. It is the one that, to my mind, is the question that must be decisive of this motion. The supreme court of the United States has had this question before it in several different cases, and has laid down general rules that of course will control all inferior courts of the United States in determining when it is a proper case for the action of the court in giving a peremptory instruction to the jury to find for the defendant by reason of the fact that the plaintiff has failed to make out his case.

I think it is apparent to every one—it cannot be questioned—that a person placing himself upon the pilot of an engine certainly puts himself in a very dangerous position; there can be no more dangerous one to be thought of upon a train or upon a locomotive. It is apparent to every one that it is a place that is exposed to the very greatest danger. In case of any accident there is scarcely any protection at all to prevent the party from being thrown off from the locomotive; it is not a place that is gotten up or intended to be used for the purpose of persons riding upon, and in case of collision, where the collision comes from the front part of the engine, it is the place of all others that is exposed to the greatest danger. Now, I think it will strike the mind of any one that if a railway company should direct or require its employes to ride upon this pilot, it is requiring them to ride in an exceedingly dangerous place; but if the employe himself places himself in that position the same rule applies to him: he has himself placed himself where there is very great danger, and the query arises whether or not that is contributory negligence.

In the case of *Hough* v. *Ry. Co.* 100 U. S. 213, that was cited in the argument yesterday in the discussion of this question, the supreme court say:

"If the engineer, after discovering or recognizing the defective condition of the cow-catcher or pilot, had continued to use the engine, without giving notice thereof to the proper officers of the company, he would undoubtedly have been guilty of such contributory negligence as to bar a recovery, so far as such defect was found to have been the efficient cause of the death. He would be held, in that case, to have himself risked the dangers which might result from the use of the engine in such defective condition."

Now, then, the evidence in this case shows that this locomotive was used for the purpose of transporting these employes and laboring men to and from the place at which they were engaged in their work. The employes knew that; they used it day after day, without complaint, so far as the evidence shows. There was no promise upon the part of the railroad company to supply them any different mode of transportation. They went upon this engine, and the evidence discloses the fact that they got upon the engine at different places; that is to say, they placed themselves upon different positions on this engine; and, among others, they placed themselves on the pilot, in front of the engine. The evidence does not show that that was done by the direction of any one in the employment of the company; that is to say, neither the engineer nor fireman, nor the boss in charge of the gang, ever directed that this should be done. It seems, as far as the evidence discloses the fact, to have been done by the men themselves; they chose to place themselves in that position. It is said, however, that one reason for it—and probably the reason that is assigned—is that the engine was so full of men that some of them, if they rode at all, were compelled to place themselves in that position, in front of the engine. Granting that position, we have this

case: That here is the company furnishing this engine for the men to ride upon; the men go upon it, and continue doing so day after day, when it is apparent to them that if they all ride upon that engine some of them must ride upon that pilot, and they choose to do so, and they place themselves in that position. Now, then, they know the risks. It seems to me, within the rule of this case of Hough against the Railroad Company, they concluded to use the engine for the purpose of being transported upon it, after they had knowledge of the fact that if they did so that they would be placing themselves in a dangerous position. They must have known that fact.

In the case of *Railroad Co.* v. *Jones*, 95 U. S. 439, (a case somewhat similar in its features to the case now before the court,) the supreme court laid down some rules which seem to me to be applicable to this case. In this case—the case of *Railroad Co.* v. *Jones*—the facts were that the person who was hurt was riding, with one other, upon the pilot of the engine. The accident was caused by collision with some cars that were standing upon the track; and this locomotive, came in collision with these cars, and the plaintiff was injured thereby. Now it appears that this plaintiff was engaged in the service of the company as a day-laborer. "He was one of the party of men employed in constructing and keeping in repair the roadway of the defendant. It was usual for the defendant to convey them to and from their place of work. Sometimes a car was used for this purpose; at others, only a locomotive and tender were provided. It was common, whether a car was provided or not, for some of the men to ride on the pilot or bumper in front of the locomotive. This was done with the approval of Van Ness, who was in charge of the laborers when at work, and the conductor of the train which carried them both ways. The plaintiff had no connection with the train. On the twelfth of November before mentioned, the party of laborers including the plaintiff, under the direction of Van Ness, were employed on the west side of the eastern branch of the Potomac, near where the defendant's road crosses the stream, in filling flat cars with dirt and unloading them at an adjacent point. The train that evening consisted of a locomotive, tender, and box car. When the party was about to leave, on their return that evening, the plaintiff was told by Van Ness to jump on anywhere; that they were behind time, and must hurry. The plaintiff was riding on the pilot of the locomotive, and while there the train ran into certain cars belonging to the defendant, and loaded with ties." That is the evidence as given by the plaintiff. Of course, upon the ruling here, the court must have viewed the evidence in the aspect that was most favorable to the plaintiff. On the part of the defendant there was evidence tending to show that Van Ness had, on several occasions before the accident, notified the laborers that they must ride in the car and not on the engine; and the plaintiff in particular, on several occasions, not long before the disaster, was forbidden to ride on the

pilot, both by Van Ness and the engineer in charge of the locomotive. "The plaintiff, in rebuttal, gave evidence tending to show that sometimes the box car was locked, when there was no other car attached to the train, and that the men were allowed by the conductor and engineer to ride on the engine, and that on the evening of the accident the engineer in charge of the locomotive knew that the plaintiff was on the pilot." The court ruled:

"One who by his negligence has brought an injury upon himself cannot recover damages for it. Such is the rule of the civil and of the common law. A plaintiff in such cases is entitled to no relief. But where the defendant has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such cases is: (1) Whether the damage was occasioned entirely by the negligence or improper conduct of the defendant; or (2) whether the plaintiff himself so far contributed to the misfortune by his own negligence, or want of ordinary care and caution, that, but for such negligence or want of care and caution on his part, the misfortune would not have happened. In the former case, the plaintiff is entitled to recover. In the latter case, he is not. It remains to apply these tests to the case before us."

The court then proceeded to say, after a brief discussion of the evidence:

"For the purposes of this case we assume that the defendant was guilty of negligence.

"The plaintiff had been warned against riding on the pilot, and forbidden to do so. It was next to the cow-catcher, and obviously a place of peril, especially in case of collision. There was room for him in the box car. He should have taken his place there. He could have gone into the box car in as little, if not less, time than it took to climb the pilot. The knowledge, assent, or direction of the company's agents as to what he did is immaterial. If told to get on anywhere; that the train was late, and that he must hurry,—this was no justification for taking such a risk. As well might he have obeyed the suggestion to ride on the cow-catcher, or put himself on the track before the advancing wheels of the locomotive. The company, though bound to a high degree of care, did not insure his safety. He was not an infant, nor *non compos.* The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter the former could not arise. He and another who rode beside him were the only persons hurt upon the train. All those in the box car, where he should have been, were uninjured. He would have escaped also if he had been there. His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit. The case is thus clearly brought within the second of the predicates of mutual negligence we have laid down."

Now, the court there hold that it would make no difference in the ruling if it should be shown that the plaintiff had occupied this position upon the pilot with the knowledge or assent, or even by the direction, of the company's agents. They hold that as immaterial; that those things would be no justification for his taking the risk; that he was not an infant,—in other words, he was of age,—he could see and know the risk as well as any other person, and if, under those circumstances, he chose to place himself in that position, then he must be held to have assumed the risks which would pertain to

'the position that he himself placed himself in, even if he did it by the direction of the company. That is the meaning of this decision. They hold, if I understand it, that if the agents of the company, the boss Van Ness or the conductor, had told him to get on that pilot, and 'he had done so and the accident happened, and he had gone there voluntarily knowing the risk and danger, that he must be held to assume all the risk and danger caused by his placing himself in that position.

The evidence in the case now before the court, just as in this case of *Railroad Co.* v. *Jones*, shows that if the plaintiff had not been on the pilot he would not have received any injury,—or, at least, none to speak of; certainly these injuries, of which he is now complaining, would not have been occasioned to him. 'Just as the court say in the case of *Railroad Co.* v. *Jones:* "This is shown with as near an approach to a demonstration as anything short of mathematics will permit," that if he had been at another place than where he was he would not have been hurt, because there were a large number of men besides himself upon that engine, and no other one received any injury, except, perhaps, one person, who was struck in the face by some wood that was thrown from the tender. It comes down, therefore, simply to the inquiry of whether or no plaintiff is to be held responsible for having placed himself in this dangerous position that he occupied. I think there can be no question about it. There certainly can be no doubt, upon that decision, that where a man voluntarily places himself on the pilot of a locomotive, it must be held by every one that he is riding in an exceedingly dangerous place, and that it is folly for a man to do it; that it is recklessness; and if injury results, it seems to me he must be held to assume the risk for it.

I have hesitated in this case, by reason of the fact that the point might be made to the jury, and they asked to find from this evidence, that the party was justified in going where he did, and the company could take no exception thereto, because the engine was not sufficient, under one view of the evidence, to afford room for these men all to ride upon it unless some of them got upon the pilot, and therefore, by reason of that fact, it must be held that the company invited him and authorized him to go there; but the difficulty with that position is that, as I understand this decision in *Railroad Co.* v. *Jones,* the supreme court of the United States expressly say that if he had gone there by the direction of the company, it would not make any difference,—he still assumed the risk. Now, all the jury could be asked to infer in this case would be that the company authorized him to go there by reason of the fact that they did not have sufficient accommodation for the men to ride any other place, and, as there was not room enough for all of them to go on the tank, that the company intended them to ride on the pilot, or directed them to go there; but, as I say, it seems to me that the supreme court have met that very position by saying that that is immaterial; that even if the agents of

the company did say, "You go here; it is a dangerous place;" yet the danger is open to the observation of every one, so that the party when he is invited to go there must be held to know the risks, and then if he chooses to go there he assumes the risks himself. That rule must not be unduly extended. There are many cases when a party might be invited to go where he himself does not know the risk,—the real dangers are not so open to his observation as to the observation of the company; and in that case there may be an exception. But each case must stand upon its own facts. Here, the accident arose, not from any hidden defect,—the danger was apparant; the plaintiff chose to ride in the most dangerous place on the locomotive, and which was open to the observation of every one. It seems to me, under the doctrine of this case, and also the doctrine of this extract from the case of *Hough* v. *Ry. Co.*, that it must be held that the party assumed all the risk that naturally followed from his riding in this dangerous place; and the evidence is clear in the case that by the reason of the fact that he was on that pilot he received the injury complained of. As to that there can be no question.

If I am right in this view of the case, it would follow that the duty is imposed upon me, as is said in this case of the *Railroad Co.* v. *Jones*, that, upon being so prayed, it is the duty of the court to direct the jury to return a verdict for the defendant, and that if I refused to do so it would be error. If I am correct in that view, it is unnecessary for me to pass upon the other question that has been discussed at considerable length, as to whether or not the plaintiff is a co-employe under the general rule of law, and whether or not, where the injury results from the negligence of a co-employe, it is one of the ordinary risks which the party assumes when he enters into the employ of the railroad company.

I must say it is with considerable regret that I am forced to the conclusion to which I have come in this case. The facts present a case which certainly must appeal very strongly to the sympathies of every one, and to the sympathies of those who are engaged in the management of this railroad company, that they should, without reference to the question of the legal liability,—whether there is any legal liability or not,—endeavor, as far as lies within their power reasonably, to aid parties who receive injuries when they are in the employ of the company. My duty, of course, is simply to enforce the law as I find it laid down by higher tribunals, whose decisions I must follow.

Entertaining the view I do of this case, gentlemen, I am compelled to grant the motion of the counsel for the defendant.

See *Waterbury* v. *N. Y. C. & H. R. R. Co.* 17 FED. REP. 671, and note, 674.