[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 373 
Accepting the facts as testified to on the part of the plaintiffs in this action, it appears that on the 25th day of September, 1884, the plaintiffs' decedent came to the station of the defendant, called Phœnix Mills, in the early morning for the purpose of taking a train to the neighboring village of Oneonta. There was a platform in front of the station, the southern end of which was used for freight and was two or three feet higher than the northern end, which was used more especially for passengers. The passenger portion of the platform was only about one foot above the ground, and communication between the upper and lower platforms was had by steps leading from one to the other. The top of the freight platform was four and one-half feet higher than the rails of the defendant's road. At the north end of the freight platform the distance between it and a car as it would pass along the track would be six inches. At the center of the freight platform it would be four inches and the same distance at the south end. The plaintiffs' decedent, upon hearing the whistle of a train approaching from the north on its way towards Oneonta, got up and stood on the passenger portion of the platform awaiting its arrival, and when it came within a short distance of the station the conductor stepped out on the platform of the rear passenger car and asked plaintiffs' decedent if he was going, and added, "if you are, jump on." There were but two witnesses sworn on the part of the plaintiffs in regard to the rate at which the train was moving when this direction was given by the conductor. One of them says the train was moving at that time six or eight miles an hour. The other, who was the engineer of the train, stated that it was going from four to six miles an hour. When the conductor directed the deceased to jump on, he was standing on the passenger platform three or four feet north of the steps connecting with the freight platform, and he started to jump on the front platform of the passenger car while it was thus in motion. He was caught in some shape, as the witnesses say, without being able to describe exactly how, and rolled along the station platform with his head and shoulders above it. His body was caught about the hips. The *Page 375 
train was stopped and he was taken out and died within a short time.
From this evidence it is quite plain that the train was in comparatively rapid motion at the time when the deceased made his attempt to board it. I say comparatively rapid motion, meaning by that a motion that was rapid when taking into consideration that a man was attempting to board a train thus moving. There can be no doubt that the train was moving at least from four to six miles an hour. The engineer thus fixes it, and being a witness for the plaintiffs and not in the defendant's employ at the time he was sworn, it may be assumed that he did not put the speed any greater than in fact it was.
The deceased was a man in the full vigor of life, presumably of ordinary judgment, at least up to the average of mankind, and he was at a familiar station, and about to take a train to go to a neighboring village a few miles distant. It was the duty of the railroad company (having advertised so to do) to stop its trains at the station in question, and to give ample time to all persons desirous of getting on or leaving trains at that station to do so.
The important question which arises is, does a man who is suijuris, and in the full possession of his faculties, with nothing to disturb his judgment, act with ordinary care in endeavoring to board a train moving at the rate of from four to six miles an hour? It seems to me there can be but one answer to such a question. That it is a dangerous, a most hazardous attempt must be the common judgment of all men. Persons are taught, from their earliest youth, the great danger attending upon an attempt to board or leave a train while it is in motion, and no person of mature years and judgment but has the knowledge that such an attempt is dangerous in the highest degree.
It is substantially admitted in this case that it would have been negligence on the part of the deceased to have made the attempt, had it not been for the request, or what is termed the direction of the conductor, to him to get on. It may be *Page 376 
assumed that this direction implied a notice to the deceased that the train would not stop at that station, and that unless he attempted to get on while the car was thus in motion, he would be left at the station and compelled to take another and a later train. It may be assumed that in giving this direction, and failing to stop the train the company was chargeable with negligence, and yet it counts for nothing as a justification or excuse for the conduct of the deceased in attempting to board a train under such circumstances.
There may, undoubtedly, be cases in which an attempt to get on or off a moving train would not be regarded as negligence, as matter of law, and where the question of negligence upon all the facts of the case should be submitted to the jury. One such case was that of Filer v. New York Central R.R. Co. (49 N.Y. 47). There the plaintiff received the injuries complained of in attempting to get off the cars while they were in motion, making very slow progress. The plaintiff, who was a woman, was directed by the brakeman on the car to get off, and there was evidence upon which the jury might have found that she was told by him that they would not stop or move more slowly to enable her to do so. The name of the station had been called and the speed of the train had been greatly reduced, so much so that baggage had been taken from the baggage-car and removed by the porter, and one man, who was supposed to be a little lame, had gotten off safely. ALLEN, J., in delivering the opinion of this court, said: "She was put to her choice, without any fault of hers, whether to obey the advice and suggestion of the defendant's servant, and follow the example of the man who had preceded her, or to remain on the cars and be carried beyond the place of her destination, and away from her friends; and it was a proper question for the jury, whether this was or was not, under the circumstances, an act of ordinary care and prudence." The learned judge, continuing, said: "Had the cars been going at a rapid rate, the plaintiff must have known that she would be injured in leaping from them, and the attempt to leave the cars, under such *Page 377 
circumstances, even at the instance of a railway servant, would have been a wanton and reckless act, and no recovery could be had against the defendant."
In Morrison v. Erie Railway Company (56 N.Y. 302), it was held that the question whether a person has been guilty of contributory negligence in attempting to alight from a car while it is in motion is not in every case a question of fact for a jury; that when the facts are undisputed the question of contributory negligence may become one of law. In that case, the plaintiff, suing by guardian, was about twelve years of age, and the train when it approached the station slowed up. It had passed the platform and, while still in motion, the plaintiff's father took her under his arm and stepped from the car and fell, and she was injured. FOLGER, J., delivering the opinion of the court, said: "Can it be said that a person of ordinary prudence and care would have swung himself from a car in motion down to the ground in the dark, laden with the weight of a child twelve years old, having but one hand and one arm to aid himself with, when there was no other danger to be avoided by meeting this, and no incentive to the act other than the inconvenience of being carried by his place of abode, and with a full apprehension of the danger he was about to run? I think not, and I am of the opinion that it is so clear that the law and the court should have given the answer without calling in the aid of a jury." (See, also, Phillips v. Rensselaer Saratoga R.R. Co.,49 N.Y. 177; Solomon v. Manhattan R. Co., 103 id. 437.)
In the last cited case ANDREWS, J., says: "Negligence, no doubt, is usually a question of fact of which the jury must inquire, but the inference of negligence in a given case may be so clear and convincing that the judge may direct a verdict. The conclusion that it is prima facie dangerous to alight from a moving train is founded on our general knowledge and common experience; and it is akin to the conclusion now generally accepted, that it is in law a dangerous and, therefore, negligent act, unless explained and justified by special circumstances, to *Page 378 
attempt to cross a railroad track without looking for approaching trains. In boarding a moving train there is generally less excuse than in alighting from one. The party attempting it is not often under the same stress of circumstances as frequently happens in the former case. He may be compelled to wait for another train, but this is an inconvenience merely, which does not justify exposing himself to hazard. * * * If men will take hazards they must bear the consequences of their own rashness, and it is no just reason for visiting the consequences upon another that his negligence co-operated in producing the result." We think that the facts in this case are so overwhelming in their nature that no reasonable judgment can be formed as to the act of the deceased in attempting to jump upon this moving train other than that it was dangerous and reckless, and that the injury resulting therefrom was contributed to by him.
We do not regard it as of the slightest importance, under the circumstances of this case, that the conductor of the train notified the deceased to jump on. That notification certainly cannot be interpreted to mean more than that the train would not stop or go slower than it was then going, and that if the deceased wanted to take it he must jump on at that moment. That does not alter the highly dangerous nature of the act itself. The deceased was in absolute safety at the time the direction was given. It created no emergency which called for the exercise of immediate judgment in the choice between two dangers. It was a simple question of possible inconvenience of taking a later train, or reaching his destination by some other conveyance, and it afforded not the slightest justification or excuse for attempting to board a train moving at that rate of speed, and when he did it he did it at his own risk.
We think the plaintiff, upon this state of facts, should have been nonsuited.
For these reasons the judgments of the courts below should be reversed, and a new trial granted, costs to abide the event. *Page 379