MINNIE BENEDICT v. MINNEAPOLIS & ST. LOUIS RAILROAD
COMPANY.[1]

May 16, 1902.[2]

Nos. 12,936—(80).

### Passenger on Railway Train.

While it is the absolute duty of a railway carrier of passengers to
provide a safe and secure place for its patrons to ride within its cars,
when such duty is performed the passenger has no right to voluntarily
extend his person beyond the line of a moving car, or ride upon its plat-
form; and if he does so, and injury follows, no recovery can be had
therefor.

### Same—Leaning out of Car.

Where a carrier of passengers by steam permits its cars to be over-

[1] MARTHA DURGIN v. MINNEAPOLIS & ST. LOUIS RAILROAD
COMPANY.

May 16, 1902.

Nos. 12,935—(79).

Appeal by plaintiff from an order of the district court for Hennepin county,
Pond, J., sustaining a demurrer to the complaint. Affirmed.
*Thomas Canty*, for appellant.
*Albert E. Clarke*, for respondent.

PER CURIAM.
This action was brought by the plaintiff as a parent to recover damages
for injuries to her minor son, sixteen years of age, sustained while protruding
his head from the window of a moving car on defendant's track, for the
purpose of seeing whether he had arrived at his destination, when it came
in contact with a post supporting an overhead bridge, which post was six
inches from the side of the car. A general demurrer was interposed, which
was argued before the trial court at the same time the demurrer was heard
in the case of Benedict v. Minneapolis & St. L. R. Co. The allegations in
this complaint, save in the respects above indicated, are in all material
respects similar to the facts set forth in that case, and we follow the view
therein adopted.
The order appealed from is affirmed.

[2] Reported in 90 N. W. 360, 1133.

crowded, and requires its passengers to ride on the platforms, it cannot excuse itself for injuries from such cause, but if a passenger, while riding on the platform, negligently extends his person beyond the car line from curiosity, his act in that respect must be regarded as negligent.

## Lad of Sixteen Years.

A youth of sixteen years of age, traveling alone, cannot be held, merely on account of his immature years, to have been incapable in law of exercising sufficient discretion and judgment to avoid incurring the risk of a voluntary exposure of his person beyond the sides of a moving train.

## Demurrer—Contributory Negligence.

In the review of a complaint upon general demurrer, *held*, that certain facts and conditions set forth therein do not excuse the conduct of an injured party, or absolve him from contributory negligence, in protruding his head beyond the sides of a moving train on which he was a passenger.

Appeal by plaintiff from an order of the district court for Hennepin county, Pond, J., sustaining a demurrer to the complaint. Affirmed.

*Thomas Canty*, for appellant.

*Albert E. Clarke*, for respondent.

LOVELY, J.

Plaintiff, as administratrix, seeks to recover for the death of her son, occurring through the alleged negligence of defendant, who demurs to the complaint upon the ground that it does not state a cause of action. The demurrer was sustained, from which order plaintiff appeals.

The essential facts in the complaint are as follows: During the summer season of 1901 defendant operated trains between Minneapolis and points on Lake Minnetonka. Defendant's passenger station is near the center of the city, and its tracks extend four miles westerly therefrom within the corporate limits. Two-fifths of a mile west of the depot its railroad passes under a bridge on Lyndale avenue. It is claimed that the defendant negligently maintains its tracks so close to the posts which support this bridge that the sides of its cars pass within ten inches of the same. At

this time defendant was running suburban trains, and transporting passengers thereon between the city and Lake Minnetonka in each direction, not only for ordinary purposes, but upon the occasion of picnics and excursions, when the cars would be greatly over-crowded, so. that their doors and windows had to be open, and passengers were required to ride upon the platforms and steps at the end of the cars. That the yards of defendant for a mile west of the depot had switches and side tracks adjacent to its main tracks, and at various points within this distance such tracks were crossed by street bridges overhead, supported by iron posts erected in the yard at the sides of the tracks. That these bridges resemble each other, and look alike to passengers. That the depot is east of and very close to one of the bridges, so that when trains arrive from the west they stop partly under it for passengers to alight. That the conductors and brakemen of the train announce the stations as the trains slow up and stop at various points under the bridges, when the passengers frequently and usually lean out from the platforms of the cars and look ahead to see if their train has arrived at its destination, which is their usual and customary habit and known to defendant. On June 30, 1901, plaintiff's intes-tate, a minor, of the age of sixteen years, was a passenger on one of these trains coming to the city from Lake Minnetonka. That this train was overcrowded with passengers returning from a pic-nic. That many drunken and disorderly persons were riding thereon, whereby intestate was compelled to stand upon the plat-form of his car. The train suddenly slowed up near the Lyndale avenue bridge, when he, with the consent of the defendant, and without any warning of the danger (or knowledge of the bridge), leaned out slightly, and looked ahead, to see if it was arriving or had arrived at its destination, when his head immediately came into collision with one of the iron posts referred to, and he re-ceived the injuries from which he died.

The position of the defendant in support of the order of the trial court is that intestate, by extending his person beyond the line of the car while in motion, committed an act of negligence, which was the proximate cause of his injury, and therefore precludes re-covery.

The law undoubtedly enjoins upon the railway carrier of passengers extraordinary diligence. This rule is intended, for reasons of public policy, to secure their safe carriage, so far as human skill and foresight can accomplish that result. Smith v. St. Paul City Ry. Co., 32 Minn. 1, 18 N. W. 827. However, railways must construct and arrange their tracks and yards to attain practical purposes in the operation of their roads. They have been permitted, without restraint from police regulation, to build tracks with switches, when necessary, in close proximity to each other. This course is unavoidable in city yards, where the right of eminent domain, in view of public as well as private interests, has restricted the appropriation of land for railroad uses. A common incident of city yards are overhead bridges, with posts to sustain them, as well as adjacent tracks upon which trains are continually passing so near to each other that a slight extension of the human body beyond the sides of a car is fraught with danger to life and limb. These conditions have always existed. They are customary, and to a large extent indispensable; hence the high degree of duty to patrons exacted of carriers of passengers has been generally regarded as fulfilled with reference to outside arrangements at such places where a safe and secure place has been provided within its cars for their occupation. Having done this, the carrier is not required, in maintaining adjoining structures, to guard against the anticipated carelessness of those who are in no danger so long as they remain in the place of safety which the carrier has furnished. The customary methods of constructing tracks, building bridges, and running trains in railroad yards render any exposure of a person beyond the car line imminently hazardous; hence there must arise a presumption in behalf of the carrier, when injury arises from such exposure, that the conduct of its business in this respect is not negligent, and imposes upon the injured party the burden of showing that it was otherwise in any particular case. While, as a general rule, it may be said that railroads can arrange structures adjoining their tracks to accomplish practical ends, even though the maintenance of the same is dangerous to those who are themselves reckless, yet it cannot be said either that an unnecessary or useless act by the railroad in

this regard would not be negligent as to an employee required to work in the yards, or even a passenger, whose person through no fault of his own, as by extraneous force, impending danger, sudden emergency, or other unavoidable cause, would be exposed to danger,

Subject to the qualifications above stated, the courts have not been able to impose upon railway carriers burdens so unreasonable that they could not be fulfilled, nor have passengers been relieved from the exercise of restraint from the curiosity which prompts them to expose their persons to the imminent risk of collision with objects outside of cars. Car windows and doors are for the admission of light and air, not to enable passengers to pursue a course which general experience declares to be extremely hazardous. The proper use of platforms is to afford travelers a safe and convenient means of entrance and exit to and from the cars when not in motion. But it follows, in view of the conditions above stated, that the voluntary exposure of the body beyond the sides of a moving train, or the improper use of the platform when safety is assured within the car, must be regarded as reckless, and the almost inevitable disaster that follows remediless. These conclusions are supported by the great weight of authority in this country. Beach, Contrib. Neg. (2d Ed.) § 155; Todd v. Old Colony, 3 Allen, 18; Id., 7 Allen, 207; Pittsburg v. McClurg, 56 Pa. St. 294; Indianapolis v. Rutherford, 29 Ind. 82; Favre v. Louisville, 91 Ky. 541, 16 S. W. 370; Georgia Pacific v. Underwood, 90 Ala. 49, 8 South. 116; Moakler v. Willamette, 18 Ore. 189, 22 Pac. 948; Carrico v. West Virginia, 35 W. Va. 389, 14 S. E. 12; Richmond v. Scott, 88 Va. 958, 14 S. E. 763; Scheiber v. Chicago, St. P., M. & O. Ry. Co., 61 Minn. 499, 63 N. W. 1034.

In a large measure the learned counsel for appellant concedes the rule as laid down in the cases cited. We quote from his thorough and exhaustive brief as follows:

"I concede that, as a general rule, a passenger who stands on the platform, or protrudes his head out of the window or outside of the outer line of the car, on a rapidly moving train on an ordinary steam railroad, under ordinary circumstances, and is thereby injured, is guilty of contributory negligence as a matter of law."

But it is urged that this complaint discloses exceptional circumstances, which take this case out of the general rule. These exceptions are: The moderate speed of the train; its frequent stops; the misleading appearance of the overhead bridges, calculated to provoke inquiry; the knowledge by defendant of the habit of passengers to put their heads out of the windows of the cars at such places; the omission to give warnings forbidding such acts; the overcrowded condition of the cars, with the incidental necessity of passengers riding on platforms, permitted by the defendant; as well as the immature age of the deceased,—which it is claimed relieve intestate from the imputation of recklessness.

We are unable to give force to the view that the speed of the train is of significance, for it was moving with sufficient rapidity to make the exposure of any part of the body dangerous, as the unfortunate accident in this case demonstrates. The misleading appearance of the overhead bridges may have excited curiosity, but cannot justify a dangerous exposure, which was not necessary, particularly as defendant was required to announce the stations when reached, and this legal duty was admittedly performed; hence we cannot hold that curiosity alone can furnish an excuse for negligent self-exposure in such cases.

The allegation of the custom of passengers to extend their heads beyond the sides of the car with the knowledge and consent of defendant, it is claimed, required warnings of the danger incurred thereby. These facts undoubtedly charged a reckless habit of the passengers thus exposing themselves. The general rule denying liability when accidents occur in such cases rests upon the ground that such conduct is so hazardous within the range of common experience that all travelers must and should have knowledge thereof, and that dangers from such causes should be so well known and anticipated that specific warning ought not to be required, and would be useless if given. These considerations have all been carefully weighed and answered in the evolution of the rule forbidding unnecessary exposure of their persons by travelers on railways in the cases cited above, and have not been considered sufficient to modify its force, so as to be the subject of innovation in this respect. The fact that the train on which intestate was a passen-

ger was one among other suburban trains, and that such trains were habitually overcrowded by passengers who were permitted and required to ride on the platforms with the knowledge and consent of the defendant, may well have excused intestate in choosing the place he occupied when injured.

If railway companies subject their trains to the same uses adopted on urban electric or trolley cars, and receive compensation for carrying passengers upon the platforms of the same, they cannot avoid responsibility for an injury arising merely from the occupation of such places by their patrons to which the injured party does not contribute. Reem v. St. Paul City Ry. Co., 77 Minn. 503, 80 N. W. 638. Had intestate fallen from the train by reason of its being overcrowded, or had he been pushed therefrom by causes attributable to the dangerous course of conduct pursued by defendant in allowing passengers to ride on its platforms, we could not hold that intestate's conduct was negligent; but the complaint rests plaintiff's right to recover upon the expressed ground that the accident resulted from the action of intestate himself. It is alleged therein that at the inopportune moment he then leaned out slightly and looked ahead as said train moved along, to see if it was arriving or had arrived at its destination. This averment repels the inference that the efficient cause of the accident was the overcrowding of the train; and, while his position on the platform may be excused by the course of defendant, it was the voluntary act of the unfortunate youth himself, wherein he exercised his own judgment, and took chances, which resulted in his death. Under the admissions of the plaintiff, her son's conduct can no more excuse him from negligence than in the case of a passenger within the car, who protrudes his head from a window and is struck by a passing train.

It remains to consider whether the immature age of intestate would, as a matter of law, demand a submission to a jury of the question of his capacity to appreciate the risks incurred. The allegation in the complaint in this respect is that he "was sixteen years of age." There are no facts alleged to show lack of intelligence, discretion, or ability ordinarily exercised by persons of that age. The rule of care imposed upon persons of immature years

has been stated in a former decision of this court in the following language: "The law very properly holds that a child of such tender years as to be incapable of exercising judgment and discretion cannot be charged with contributory negligence; but this principle cannot be applied as a rule of law to all children, without regard to their age or mental capacity. Children may be liable for their torts or punished for their crimes, and they may be guilty of negligence as well as adults. The law very humanely does not require the same degree of care on the part of a child as of a person of mature years, but he is responsible for the exercise of such care and vigilance as may reasonably be expected of one of his age and capacity, and the want of that degree of care is negligence." Twist v. Winona & St. P. R. Co., 39 Minn. 164, 168, 39 N. W. 402. See also Ludwig v. Pillsbury, 35 Minn. 256, 28 N. W. 505; Powers v. Chicago, M. & St. P. Ry. Co., 57 Minn. 332, 59 N. W. 307; Tucker v. New York, 124 N. Y. 308, 26 N. E. 916; Masser v. Chicago, 68 Iowa, 602, 27 N. W. 776. The general rule that it is for the jury to determine the capacity of a minor to exercise discretion and judgment, and whether the failure to do so is contributory negligence, cannot reasonably be applied in cases where such persons are infants only in legal theory. An infant at fourteen years, under the policy of our law, has sufficient discretion to select a guardian (G. S. 1894, § 4535), and is capable of malice which would subject him to penal consequences for crime when above the age of twelve (G. S. 1894, § 6301). It would seem to follow that the mere fact alone that the infant is above that age, though under twenty-one, would not presumptively absolve him from the consequence of contributory negligence. While an infant over twelve years might not have sufficient capacity to appreciate the risk of a dangerous situation, owing to peculiar individual characteristics affecting his capacity, yet we are unable to hold that a youth sixteen years of age, traveling alone on a railway train, is not, as a matter of law, endowed with sufficient intelligence and discretion to avoid the consequences of acts which the law considers culpably negligent. Patterson, Ry. Acc. Law, § 7; Nagle v. Allegheny, 88 Pa. St. 35; Deitrich v. Baltimore, 58 Md. 347.

The order appealed from is affirmed.