GUY HUBER, Appellant, v. CEDAR RAPIDS AND MARION CITY
RAILWAY COMPANY.

Street railways: INJURY TO PASSENGER: CONTRIBUTORY NEGLIGENCE.
Where a street car passenger, standing on the platform, volun-
tarily leaned over the side railing so that his head came in contact
with a trolley pole located 19 to 20 inches from the side of the
car, he was, as a matter of law, guilty of contributory negligence
precluding recovery for the injury.

*Appeal from Linn District Court.*— HON. WM. G. THOMP-
SON, Judge.

WEDNESDAY, JULY 13, 1904.

ACTION for damages. The plaintiff appeals from a
judgment on a directed verdict for the defendant.— *Affirmed.*

*Jamison & Smyth,* for appellant.

*Chas. A. Clark & Son* and *Wm. G. Clark,* for appellee.

LADD, J.—The defendant operates an electric street car
line from Marion to Cedar Rapids. The track is single,
with trolley poles on the south side to Seventeenth street,
in the latter city, and from there on double, with poles be-
tween. The inside rails are from five feet eleven inches to
six feet and one inch apart, and iron poles to support the
trolley wires were set midway between them. These poles
are six and a half inches wide, and two feet and eight inches,
or a little more, from the inside rail. The plaintiff boarded
car No. 6 at Marion, and rode on the back platform, next
to the railing opposite the step, with his back against the
car. The railing was a cap of wood about two inches wide,
attached to an iron rod thirty-four inches above the platform,
and connected therewith by sheet iron. The step was on the

right side, next to the main part of the car.  Two rods extended from the floor of the platform to the hood or roof of the car over the platform — one next to the step, and the other nearly opposite the corner of the car.  This railing was attached to the car several inches from its side, so that the platform was narrower than the main car, and extended about three and a half feet back.  Some time before reaching Fifteenth street the plaintiff smelled something like clothes burning, when he looked down, and gave the matter no further attention until (in his own words) " all at once it just flashed up in my face like powder, and I leaned over and looked down, and stooped with my right hand on the railing and looked down; and, just as I stooped over, I got a butt on the head with the post."  He further testified that smoke was coming under the side of the car —" enough smoke so you could not see your hand before your face."  He had an overcoat on, and, in answer to the question, " You thought that the smoke was coming up from the outside from your overcoat?" answered: " It was coming up from down here some place.  Q. And you looked over the railing?  A. I stooped over.  *  *  *  When I stooped over, I was right up against the car.  My back was right up to the end of the car.  Q. Then you must have gone from your side — your right over the railing did it?  A. I stooped over.  I turned about a quarter of the way around, as near as I can remember, so that my stomach was over the railing."  While he knew poles were required, he had not noticed their location. There was no showing from which it might have been inferred that the car swayed.  The distance from the trolley poles to the side of the car was from fourteen to seventeen inches, and to the railing from nineteen to twenty-four inches.  There was an enlargement of the poles at about seven feet from the ground, bringing them at that height about one and a half inches nearer the track.

Passengers, while smoking, were customarily permitted to ride on the platform, and it is thought by appellant that

due care required that such passengers should have been guarded from any danger incident. to the trolley poles by placing a screen or netting of some kind between the railing and the hood or canopy over the platform.   Whether the, averments of the petition were sufficient to raise this question, need not be determined, for, in any event, the plaintiff was at fault, and contributed to his own injury.   There is some controversy among the authorities as to whether a passenger, without some special reason for so doing, is negligent, as a matter of law, in riding on the platform; but all unite in holding that, when he chooses that place in which to ride, he takes upon himself the duty of looking out for, and protecting himself against the usual and obvious perils attendant upon his position.   3 Thompson, Negligence, sections 3572, 3577; *Watson v. Portland, etc., R. Co.,* 91 Me. 584 (40 Atl. Rep. 699, 44 L. R. A. 157, 64 Am. St. Rep. 268).   See *Moody v. Ry.,* 182 Mass. 158 (65 N. E. Rep. 29).   Probably the danger from too close proximity of the trolley pole is not to be included among these perils, for passengers have the right to assume that the road has been so constructed as to obviate collisions therewith in the ordinary course of travel, and are not required to keep a lookout for such poles.   See *Elliott v. Newport, etc., R. R.. Co.,* 18 R. I. 707 (28 Atl. Rep. 338, 31 Atl. Rep. 694, 23 L. R. A. 208). But it does not follow that these poles must be placed beyond the reach of passengers.   A passenger is held not to be negligent, as a matter of law, in allowing his hand or part of his arm to protrude from a street car window.   *Dahlberg v. Minneapolis S. R. Co.,* 32 Minn. 404 (21 N. W. Rep. 545, 50 Am. Rep. 585); *Seigel v. Eisen,* 41 Cal. 109; *Summers v. Crescent City,* 34 La. Ann. 139 (44 Am. Rep. 419); *Miller v. St. Louis Ry. Co.,* 5 Mo. App. 471; *Germantown, etc., Ry. Co. v. Brophy,* 105 Pa. 38.   But it is only when this is incident to his position in the car,. and we have discovered no case in which voluntarily extending the arm any considerable distance beyond the surface of the car, or pro-

truding the head through the window, has been treated other-
wise than as negligence *per se*.   Every one appreciates the
danger of exposing any portion of the person beyond the
sides of a rapidly moving car, and, when voluntarily done,
the current of authority is to the effect that it is such negli-
gence as to preclude recovery for the injury received.
*Benedict v. Minneapolis & St. Louis Ry. Co.*, 86 Minn. 224
(90 N. W. Rep. 360, 57 L. R. A. 639).   The distinction is
illustrated in *Cummings v. Worcester L. & S. St. Co.*, 166
Mass. 220 (44 N. E. Rep. 126), where a passenger was rid-
ing on the front platform or steps of a closed car.   He
claimed that he had one foot on the step, and the other on
the platform, facing it, and that he happened to turn his
head in the direction the car was moving, when he was struck
in the face by a post, while the evidence in behalf of defend-
ant tended to show that he was facing the street, with both
feet on the lower step, his left hand on the dasher rail, and
his right hand on the body rail, intentionally leaning out
beyond the car, and looking back in the opposite direction
from which it was going.   Instructions to the effect that " a
casual or momentarily leaning out, such as would be incident
to securing a more comfortable or safer position, would not
necessarily preclude him from recovery," but that, if he was
in the position described by defendant's witnesses — delib-
erately leaning out beyond the car line and looking back —
when struck, he was negligent, as a matter of law.   In *Sibley
v. N. O. City, etc., Ry. Co.*, 49 La. Ann. 588 (21 South.
Rep. 850), the plaintiff was riding on the running board of
a summer car.   The outer edge of the board, some eighteen
inches wide, was fourteen or fifteen inches from the trolley
pole, and the nearest rail was from twenty-six to thirty-two
inches from the pole.   He leaned back in the darkness in
order to get off, or for some other purpose, and came in
contact with one of the poles.   He was held guilty of negli-
gence, the court saying that " ordinary prudence would sug-
gest not to project one's body into the darkness a distance of

one foot outside of the running steps on a car in motion." In *Moore v. Edison E. Co.,* 43 La. Ann. 792 (9 South. Rep. 433), the court, conceding that the injured party put his head out of the window to see if he was on the right car, and that it came in contact with a post twelve inches from its side, held that he could not recover; suggesting that " if a passenger has the right of putting out his head, besides his elbows and chest, why should he not have also that of stretching out his arms, legs, and even hanging out his whole body ? " See, also, *Flynn v. Traction Co.,* 64 N. J. Sup. 375 (45 Atl. Rep. 799) ; 67 N. J. Err. & App. 546 (52 Atl. Rep. 369). The theory of counsel that plaintiff was involuntarily leaning over, owing to the supposition that his coat was on fire, is not borne out by the record. According to his own story, he was turned part way around, with his stomach over the railing — stooping over it. He must have been attempting to look under the car to see from whence the smoke came. If so, he was exposing his body in order to satisfy his curiosity, and, under the authorities cited, must be held to have done so at his own risk. Certainly his position was inconsistent with the supposition that he was merely examining his coat. It is hardly conceivable that in doing such a thing he would have leaned his body from 19 inches to 24 inches beyond the railing next to which he was standing. If he did, however, the act was of such a nature as to preclude the inference that it might have been done in the involuntary examination of his clothing. The district court was right in concluding that the voluntary projection of his body beyond the side of the moving car, thereby exposing it to the danger of collision with any unseen object in the way, was negligence.— AFFIRMED.