## SALVADOR HERRERA

*v.*

## RAMON VALDÉS.

Law, No. 492.

1. Negligence is contributory when, without the doing of the act charged to be negligent, the accident could not have happened.
2. Save in rare instances, it is negligence to board a moving train.
3. A passenger about to board a moving train must look ahead, and will be presumed to have seen anything that was in plain view.

NOTE.—*Passenger; contributory negligence.*—In the following editorial notes the various questions on the subject of the negligence of passengers are fully presented: Passenger's negligent exposure of person at car win-

Herrera v. Valdés.

4. It is nearly always negligence for a passenger to ride on the platform of a moving car; especially so when there is room for him inside of the car.
5. It is negligence *per se* for a passenger to allow any portion of his body to extend outside of the line of the car.

Opinion delivered January 9, 1909.

---

*Mr. R. H. Todd* and *Mr. Willis Sweet,* attorneys for plaintiff.

*Mr. T. D. Mott, Jr.,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

This cause is before us on a motion for a new trial. It is a personal injury case. It has been tried before a jury three times within the last year and a half. In the first two trials the jury failed to agree; and in the latter they returned a verdict in favor of the plaintiff for $4,000. Under the organic act, no appeal lies from the action of this court when no con-

---

dow, note to Richmond & D. R. Co. v. Scott, 16 L.R.A. 91; Boarding moving train, note to Carr v. Eel River & E. R. Co. 21 L.R.A. 356; Negligence of passenger in passing from one car to another, note to McAfee v. Huidekoper, 34 L.R.A. 720; Negligence in getting on or off moving street car, note to Jagger v. People's Street R. Co. 38 L.R.A. 786; Contributory negligence of passenger in riding or standing on running board of street car, notes to Burns v. Johnstown Pass. R. Co. 2 L.R.A.(N.S.) 1191, and Harding v. Philadelphia Rapid Transit Co. 10 L.R.A.(N.S.) 352; Exposure by passenger inside of street car of part of his body beyond side of car, note to Georgetown & T. R. Co. v. Smith, 5 L.R.A.(N.S.) 274; Riding on platform of street car as negligence, note to Capital Traction Co. v. Brown, 12 L.R.A.(N.S.) 831; Contributory negligence of persons about to take trains, note to Warner v. Baltimore & O. R. Co. 42 L. ed. U. S. 491.

Herrera v. Valdés.

stitutional question or law of the United States is involved, unless the decision is for more than $5,000, exclusive of interest and costs. Hence, in a case like this, we feel our responsibility keenly.

The motion for a new trial, in twenty-eight pages of typewritten matter, sets out forty-seven different alleged reasons why counsel thinks it ought to be granted. Plaintiff's counsel have replied in a few remarks which are set forth in twenty-four similarly written pages. Besides this, both sides were fully heard orally. We have been cited to, and have actually examined, nearly half a hundred different adjudicated cases from among the several states of the Union, which are supposed to have more or less application. We are not very much impressed by the great number of alleged errors set forth in the motion, because, after a full examination of the case and of the instructions given to the jury, we are satisfied that, if plaintiff is entitled to recover at all, not only was the cause fairly and impartially tried and submitted, but defendant was rather favored than injured by the court's action in that regard. But the question that is bothering us is fundamental. It is whether the plaintiff, on the facts as finally developed, has, in law, any right to recover at all; and whether, after the proofs were all in, we were warranted in sending the case to the jury, instead of then and there instructing a verdict for defendant.

Having presided at the three trials, the circumstances surrounding the injury to plaintiff are now thoroughly well known to us. While the testimony varied considerably in the different hearings, the real facts, as developed in the last trial, and as practically admitted by plaintiff's counsel, leaving out unnecessary details, are substantially as follows:

The plaintiff is a poor and somewhat ignorant native Porto

Rican.  He is about twenty-three years of age.  The injury he sustained was very severe.  As a result of it, his right arm had to be amputated near the shoulder.

One afternoon in the spring of 1907, the plaintiff left San Juan on a message, to carry a parcel to Bayamon, and crossed the bay over defendant's ferry line.  After landing at Cataño, on the south side of the bay, he continued his journey on defendant's railroad, which is a little narrow-gauge 5-mile tramway run by steam, out to the end of the line at Bayamon.  After delivering his parcel there in the town, he came back to the depot.  This depot is used for both passenger and freight traffic.  The west side, where the main track is located, is used for the passenger service, and the passengers usually are kept inside of a gate in the waiting room, where tickets can be purchased, until the train pulls in to receive them, or until it is nearly time to start, when the gate is opened and they are permitted to come out on the platform and enter the train for Cataño and San Juan.  The east side is used for the freighting business, and has a side track or two running into it.  There is no passenger platform on the ground on that side, but all the passenger cars have their steps and platforms open on that side the same as on the passenger platform side.  One of these side tracks is quite close to the main track, and parallels it for some little distance out northward from the depot.  On the day in question, when plaintiff came back to the depot at Bayamon, he either entered the depot on the passenger side, and crossed over to the freight side, or perhaps entered first on the freight side of the depot, and stood there, talking to some acquaintances.  It seems he had, off and on, for some time previous, been an employee in and around this little railway and that depot, and knew the workmen, and also presumably knew the situation of things.

There was considerable conflict in the evidence of plaintiff himself in these three different trials. During the first, at least, he tried to establish that he had got on the train from the passenger side of the depot, in the regular way, or, at least, had got on from the platform or the ground close to its end on that side, after the train had started, and before it had attained much, if any, speed. In the third trial he confessed, and his counsel admitted in argument that the fact was, that he got on from the opposite or freight side after the train was in motion. In each of the trials the defense introduced considerable evidence tending to show that plaintiff had in fact got on the train from the east or freight side, after the train had started. From the evidence in this last trial the court is unhesitatingly of the opinion, and counsel for plaintiff admit it, and did so in their arguments to the jury, that plaintiff was talking with these acquaintances in front of one of the freight warehouses on the east side of this depot, and that, after the train had whistled and started, he ran after it, and attempted to get on the front platform of the first-class car, when it was some 30 meters or about 100 feet from the starting point. There was evidence in all of the trials that the depot master saw him running after the train, and yelled at him while he was running, and warned him not to try to get on. Plaintiff's witnesses testified that they did not hear this warning of this station master.

The undisputed evidence in this last trial was that, an hour or so previous to the time of the accident, defendant's employees at the other end of the line, at Cataño, loaded some large, triangular bridge irons or trusses upon a flat car. That they piled them with their bases together, laying them sideways on the top of the car, with the apex of the angle of each truss project-

ing to the right or the left of the platform of the car for several feet; in fact, they projected so far that it is pretty well in evidence they scratched the buildings standing close to the track as they were being hauled in towards the Bayamon depot at the end of the line, and were so manifestly dangerous as that one of the men at the Cataño end telephoned to the man in charge up at Bayamon, to look out for these cars with the trusses, as they came in; that they projected so much over the sides of the flat car as to be dangerous, etc. There were four of these trusses loaded on this car, two on each side, but one being on top of the other, and projecting, as stated. This car was hauled in close to the Bayamon depot, and was left standing on this side track, so that when the passenger train which plaintiff was trying to catch, shortly thereafter passed out, the apex of the trusses scratched the passenger coaches as they went by. The evidence was somewhat conflicting as to the mode in which plaintiff boarded the train. There was some evidence that he was rolling a hoop along, or parallel with the moving train, and suddenly dropped the hoop and started running after the train; but there is no dispute that he started from the vicinity of the freight warehouse, and ran after the train, and caught the hand rail at the side of the steps of the front end of one of the coaches, when he was struck by the trusses that were perhaps then scratching along the side of the car, or that, at any rate, so scratched the car after he had been struck. It is not certain from the evidence whether he was thus injured after he got hold of the hand rails of the car steps and was pulling himself up on the steps, or whether he had actually got on the steps, and was standing there with his back towards the body of the car. At any rate, it all occurred in an instant. Defendant

Herrera v. Valdés.

contends that, under these circumstances, plaintiff was not a passenger, as he had not yet been accepted as such, and would not be accepted as such while trying to board the train in that way, while it was in motion; that he did not yet have a ticket, and had not in fact arrived at a place of safety on the train, although he was in fact on his return journey, and had paid his fare on the outward portion of the trip.

Counsel for plaintiff contend that these facts make the case simple, and that, under the circumstances, it was a case to go to a jury, and that plaintiff is entitled to recover. With all due respect, we do not now think that, on these facts, it is a plain or simple case; but, on the contrary, we confess that it is one which raises the gravest doubts in our mind as to the plaintiff's right to recover at all, and since our examination of the authorities on this motion we have become convinced that it was error to overrule the motion for an instruction.

There is considerable excuse for our having let the case go to the jury at the first trial, when it was still a question for the jury to decide whether plaintiff got on the train regularly and properly from the passenger side of the depot, or from the ground, on the other side, either before it had started or just as it was starting; but when, as in this last trial, it is admitted that he got on the train from the freight side, and that he ran after the train in order to catch it, and jumped onto the step of the coach after it had gone about a hundred feet, a quite different question is involved. Moreover, not until after the verdict in the third trial did counsel call our attention to the law as settled by the overwhelming weight of authorities in the adjudicated cases, with reference to getting on a train while it is in motion, and with reference to passengers sustaining injury

to their limbs extending beyond the sides of the cars or through
the windows.  We confess to having, especially on this island,
where juries do not understand such things, considerable dis-
inclination to take any case from a jury.  These facts, coupled
with the unique statement of one of the counsel for plaintiff,
in his argument against the motion to instruct, that it was
"easy to determine what the proximate cause of the injury was,
because the negligence of the plaintiff in running after the
train, catching it, and jumping on, could have occurred many
times and plaintiff would not have been injured were it not for
the gross and almost wanton negligence of the defendant in
leaving this car, loaded with the trusses, standing on the side
track," may have misled us and caused us to let the case go to
the jury.

We find it to be the law that plaintiff's negligence is not con-
tributory when the accident would have occurred anyway with-
out it; but so is the converse of the proposition here; and
therefore it seems to us that, if plaintiff had boarded that train
in the proper and regular way, he could have done it any num-
ber of times and not been injured by these trusses, negligently
left on the car on the side track, because no other person on that
train except himself was injured, they all having got to a place
of safety within the car before the train started.  See Carrico
v. West Virginia, 39 W. Va. 86, 24 L.R.A. 50, 19 S. E. 571,
and cases cited.  This case is a very well-considered one on this
subject.  See also Farlow v. Kelly, 108 U. S. 288, 27 L. ed.
726, 2 Sup. Ct. Rep. 555.

We find it also to be the law that it is, except, perhaps, in
the rarest cases, held to be negligence *per se* to board a moving
train, and, of course, all the more so to run after a moving train

in order to catch and board it. See Hunter v. Cooperstown & S. Valley R. Co. 112 N. Y. 371, 2 L.R.A. 832, 8 Am. St. Rep. 752, 19 N. E. 820. This was a case where a would-be passenger at a railroad station attempted to board a passing train while it was in quite rapid motion, because the conductor said that if he wanted to take that train he must jump on, as it would not stop. Yet the doctrine as there held, that it was negligence for the passenger to so get on the train, appears to have been approved by the Supreme Court of the United States in an opinion by Mr. Justice Peckham in Northern P. R. Co. v. Egeland, 163 U. S. 99, 41 L. ed. 86, 16 Sup. Ct. Rep. 975. We will refer to this latter case hereafter.

We further find it to be the law that every person about to board a train that is moving is bound to look ahead and see what danger there is in the way; and that such person will be presumed to have seen what was in the plain view, and that in such case a passenger takes the risk of getting on the train in that way. See McLaren v. Alabama Midland R. Co. 100 Ala. 506, 14 So. 405. See also Northern P. R. Co. v. Freeman, 174 U. S. 379, 43 L. ed. 1014, 19 Sup. Ct. Rep. 763. In the former case, plaintiff himself admitted that, when he attempted to board the train, it was moving at the rate of 2 or 3 miles an hour or faster, while some of the other witnesses contended that it was going 5 or 6 miles an hour. The court held in that case, that the risk was assumed voluntarily and without knowledge of the defendant, when there was no necessity for assuming the risk, but was purely a matter of preference by the plaintiff.

It is unquestionably the law that it is negligence *per se* for a person riding upon a steam railway to ordinarily ride on the platform or steps of the car, especially when there is plenty of

room inside of the car. See Camden & A. R. Co. v. Hoosey, 99 Pa. 492, 44 Am. Rep. 120; Torrey v. Boston & A. R. Co. 147 Mass. 412, 18 N. E. 213. Also Worthington v. Central Vermont R. Co. 64 Vt. 107, 15 L.R.A. 326, 23 Atl. 590. This latter in a case that thoroughly treats the subject, and is profitable reading for any person desiring to know this branch of the law. See also Goodwin v. Boston & A. R. Co. 84 Me. 203, 24 Atl. 816; Cincinnati, L. & A. Electric Street R. Co. v. Lohe, 67 L.R.A. 637, notes and cases cited.

Of course, this strict rule is not applicable in this strict sense to street cars, and, in truth, this little tramway of the defendant here ought not to be considered anything more than a street railway, even though it carries heavy freight, and it is run by steam; but it will be found from an examination of the cases above cited, especially the last one, that the rule referred to has very considerable application even to such a tramway railroad.

We also find it to be almost universally held by the courts that it is negligence *per se* in any persons riding upon a steam railway to permit any parts of their bodies to extend outside of the side line of the car, or to put their heads or arms through the windows. After a considerable examination of the cases, we are astonished to find the extent to which courts have gone in sustaining this rule, and, in truth, we do not personally subscribe to it in the strict sense in which courts seem to have held to it. One is almost bewildered with the number of cases holding that, where the arm of a passenger sticks out an inch or two, or his elbow just reaches over the edge of the window sill of a car and he is injured, even by the gross negligence of the company, that still, such alleged negligence upon the passenger's part is held to prevent recovery. See Favre v. Louisville &

Herrera v. Valdés.

N. R. Co. 91 Ky. 541, 16 S. W. 370; Todd v. Old Colony & F. River R. Co. 7 Allen, 207, 83 Am. Dec. 679; Clarke v. Louisville & N. R. Co. 101 Ky. 34, 36 L.R.A. 123, 39 S. W. 840, and cases cited; Benedict v. Minneapolis & St. L. R. Co. 86 Minn. 224, 57 L.R.A. 641, 91 Am. St. Rep. 345, 90 N. W. 360, and cases cited. In addition to these cases, counsel has cited us to more than twenty-five other cases, all of which we have examined, with the result that we find the rule to be as stated. Now, in this case, if the plaintiff had got on that train at the depot, from either side of the train, before it had started, and had gone into the car and sat down in a seat, he would not have been injured at all, because, as stated, and as the evidence showed, no other person was injured on that train, at that time; but instead of doing this, he ran alongside of the train for 30 meters or more, when it was gaining speed all of the time; this is practically undisputed; and then, when attempting to board the train, he was instantly injured. Therefore, we may eliminate from the cause entirely the question as to whether he was a trespasser or a passenger, and admit that he was a passenger, which we in fact think he was, if necessary, and still, if he had not boarded the train in this negligent way, or remained on the steps of the car, not even the gross negligence of the defendant would have caused his injury.

As we before stated, it has been held, and, after our examination of the question, we are constrained to believe that it is the true rule, that, when considering what is the proximate cause of an injury, the best way to do so is to ascertain, if possible, from the circumstances, whether the accident would have occurred anyway, notwithstanding the negligence of the plaintiff. If it would, it is universally held that the contributory negli-

gence of a plaintiff does not bar a recovery. See Carrico's Case, supra, and cases it cites. Now, it seems to us that in this case, were it not for the contributory negligence of the plaintiff, the accident would not have occurred at all; and, if this is so, however we may sympathize, as we certainly do, with plaintiff, for he has been frightfully injured, it is our duty to hold that the defendant is not liable, and nothing short of judicial cowardice ought to prevent us from so holding. We will therefore not shrink from it.

The Supreme Court of the United States, in the celebrated case of Baltimore & O. R. Co. v. Jones, 95 U. S. 442, 24 L. ed. 506, held that "one who, by his negligence, has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and of the common law. The plaintiff, in such cases, is entitled to no relief."

In that case, which is referred to and commented on in the Egeland Case, supra, a workman, although he had been warned against doing it, when returning from his work on a railway that ran through a tunnel, rode on the pilot of the engine. The railway company was grossly negligent, as it left some cars standing on the main track in front of this engine as it went into the tunnel. The plaintiff in that case was killed, and yet the Supreme Court of the United States held, notwithstanding this manifestly gross negligence of the railway company, that the plaintiff could not recover. Of course, this was the case of an employee, and not that of a passenger, to whom the carrier owes a greater duty. But, in the case of Farlow v. Kelly, 108 U. S. 288, 27 L. ed. 726, 2 Sup. Ct. Rep. 555, the Supreme Court of the United States (and the facts in that case were nearly like these here) held that of course it was negligent

for the railway company, through their servants, to permit a car to stand upon a side track before the arrival of a passenger train, in such position that the incoming train must strike it, and that it entails liability upon the company as a common carrier for accidents happening in consequence. But the court, in that very case, held that plaintiff, Kelly, was not guilty of contributory negligence in having his elbow out of the window of the car he was riding in, because, before the collision, his elbow had simply been resting on the window sill, and was, by the shock of the collision, forced out through the window and injured. That, as can be seen, was a case where the passenger was quietly sitting within the car, with his elbow merely on the window sill, and the intimation of the court is that, if his elbow or arm had been sticking out of the window, then, not even in that case, would the gross negligence of the company, which was just about like the defendant's negligence in the case at bar, in leaving this car on the side track, so close as to collide with the passenger train, have entitled the plaintiff to recover. It seems to us that this surely is the law here, because we must follow the Supreme Court of the United States.

As stated, the Jones Case, supra, and a similar case, Kresanowski v. Northern P. R. Co. 5 McCrary, 528, 18 Fed. 229, are reviewed and distinguished by the Supreme Court of the United States in Northern P. R. Co. v. Egeland, 163 U. S. 93, 41 L. ed. 82, 16 Sup. Ct. Rep. 975, supra. But the argument of Mr. Justice Peckham, in reviewing them, convinces us that the rule obtaining under the decisions of the Supreme Court of the United States should have prevented us from letting the case at bar go to the jury.

Counsel for plaintiff here have not, in our opinion, in their

Herrera v. Valdés.

reply to the points made in the motion for a new trial, satisfactorily answered them. After examining the matter pretty thoroughly, we are confident that the reason is because the points made cannot be answered. The law is against plaintiff's right to recover on the facts here. Therefore the motion for a new trial will be granted, and it is so ordered.

We assume that counsel for plaintiff will now dismiss the case. The court would do so, save that we have doubts about our authority; but, as counsel can see, if the proofs on another trial should be the same as upon the last one, which they undoubtedly will, the court will certainly instruct the jury against plaintiff.